[615 NYS2d 351]

CORONET CAPITAL COMPANY, PLAINTIFF, v ROSALIND T. SPODEK, Doing Business as COLLEGE PROPERTIES, et al., Defendants, and J. LEONARD SPODEK, Appellant. FRED LEIST et al., Respondents.

CORONET CAPITAL COMPANY, Plaintiff, v ROSALIND T. SPODEK, Doing Business as COLLEGE PROPERTIES, et al., Appellants, et al., Defendants. LAURENCE J. GOLD, as Temporary Receiver, Respondent.

First Department, August 4, 1994

## APPEARANCES OF COUNSEL

*Martin B. Adelman, P. C.,* New York City, for J. Leonard Spodek, appellant.

*Alan G. Blumberg* and *Michael L. Kaplan* of counsel, Brooklyn *(Leonard Goldstein* and *Szold & Brandwen,* attorneys), for Rosalind T. Spodek and another, appellants.

*Josh B. Rosenblum* and *Kenneth P. Mintz* of counsel, New Hyde Park *(Gutman, Mintz, Baker & Sonnenfeldt, P. C.,* attorneys), for Fred Leist and others, respondents.

*John A. Monteleone* of counsel, Brooklyn *(Lindenbaum & Young, P. C.,* attorneys), for Laurence J. Gold, respondent.

## OPINION OF THE COURT

Tom, J.

Defendant, J. Leonard Spodek, was the guarantor of a mortgage, pursuant to a written guaranty dated September 2, 1987, on the building designated as 777 East 31st Street, Brooklyn, New York (the East 31st St. Building). The building was owned by Mr. Spodek's wife, defendant Rosalind J. Spodek. It was in this building that Mr. Spodek illegally converted storage space in the southeast corner of the lobby into an office for his real estate management company.

Coronet Capital Company (Coronet), the mortgagee, commenced an action, on or about October 4, 1988, to foreclose on the East 31st St. Building and on another building owned by Mr. Spodek located at 10 Stratford Road, Brooklyn, New York (the Stratford Building). Together, the residential buildings housed approximately 220 tenants.

The Spodeks acknowledged service of process and by order dated October 19, 1988, respondent Laurence J. Gold was appointed temporary receiver of the buildings (the Receiver) by Justice Gabriel Krausman. The Receiver contends that upon inspecting the buildings, he found, *inter alia,* that: the buildings were in "reprehensible" condition and were unfit for human habitation; the Stratford Building was involved in a partial rent strike and the East 31st St. Building was on the verge of a rent strike; there was little or no heat and hot

water; and various vendors and contractors would not service the buildings because of nonpayment of bills. On or about October 21, 1988, the Receiver sent a notice to attorn to all of the tenants directing them that all rents due "now and in the future", as well as all arrears, are to be sent to him.

Mr. Spodek, however, refused to cooperate with the Receiver, would not supply a rent roll, leases or Division of Housing and Community Renewal registrations, refused to vacate his offices in the East 31st St. Building, and would not stop collecting rent. Less than two months after his appointment, the Receiver moved, by order to show cause (without a temporary restraining order) signed on December 15, 1988, for an injunction restraining Mr. Spodek and his agents: from interfering with the Receiver's duties and responsibilities; from demanding payment for, or collecting rents; from occupying or using the storage room converted into an office; and directing them to correct the Department of Housing Preservation and Development (HPD) violations caused by the illegal conversion of the storage room into office space.

In support of the foregoing, the Receiver submitted evidence (a letter from a tenant and a rent check made payable to Ms. Spodek's real estate business, College Properties) which indicates that despite the service of the notice to attorn, defendants continued to accept rent from the tenants. The Receiver argued that in addition to correcting the HPD violations, the Spodeks should be forced to vacate the converted office space so as to deprive them of a presence in the building and the base from which they are collecting rents.

Although the order to show cause required personal service upon the Spodeks, the affidavit of service indicates that this was not accomplished as to Mr. Spodek as there was no follow-up mailing. Nonetheless, on or about February 21, 1989, Justice Aronin executed an order granting a preliminary injunction for the relief sought. On or about March 14, 1989, Mr. Spodek and his agents were served with the injunction, by ordinary mail, addressed to the illegally converted office in the East 31st St. Building.

By order to show cause dated May 9, 1989, the Receiver moved for an order punishing the Spodeks for contempt for failing to obey the directives of the injunction. The Receiver alleged that the Spodeks continued to occupy the lobby office and undermine his authority and also interfered with his ability to maintain and operate the buildings. The motion was subsequently denied due to the nonappearance of either side.

By notice of motion dated July 27, 1989, the Receiver moved for contempt a second time and, in addition to the previously proffered grounds, the Receiver delineated, in detail, the dangerous conditions in the East 31st St. Building, including those caused by the illegal conversion of lobby storage space into an office which resulted in a housing code violation issued by HPD on February 16, 1988.

The foregoing motion was granted on default and on or about December 8, 1989, Mr. Spodek moved, *pro se,* by order to show cause, for an order vacating his default. Mr. Spodek alleged that he had been ordered deposed in another action on the return date of the contempt motion and that he had been misled by opposing counsel, who purportedly had agreed to adjourn the contempt motion. In way of a meritorious defense, Mr. Spodek asserted that he had vacated the lobby office and had hired an architect to file plans in order to legalize the occupancy.

The IAS Court denied Mr. Spodek's motion and on January 25, 1990, Justice Aronin signed a final order of contempt fining each contemnor $250 and allowing them a window through which to purge the contempt by surrendering the office space on or before February 15, 1990.

In the interim, on or about November 8, 1989, Coronet was awarded a judgment of foreclosure and sale which, *inter alia,* contained the standard provision for the purchaser to take title subject to the "rights of tenants and/or occupants in possession". The judgment also provided that "defendants in this action and all persons claiming under them * * * hereby are, forever barred and foreclosed of all right, claim, lien, title interest and equity of redemption in said mortgaged premises". The East 31st St. Building was subsequently purchased on May 1, 1990 by Fred, Scott, Ivan and Seth Leist (the Leists).

By notice of motion dated March 5, 1991, the Leists gave Mr. Spodek notice that possession must be delivered; that he would be subject to contempt for his failure to vacate the lobby office space as set forth in the foreclosure judgment; and that failure to comply would result in an application, pursuant to RPAPL 221, to have the Sheriff assist in delivering possession.

In support of their motion, the Leists asserted that Mr. Spodek continued to occupy the converted storage space as well as three interior garage spaces, and that the Spodeks failed to pay rent or utility fees for that space (the purchasers

were concerned because computer and other electronic equipment in the Spodeks' office utilized a great deal of electricity).

In opposition, Mr. Spodek averred that in addition to having an ownership interest in the buildings, he was also a tenant of the East 31st St. Building pursuant to a lease for the office/storage space purportedly executed two years prior to the commencement of the foreclosure action. Mr. Spodek contended that since he was served with the notice of the foreclosure action not as a tenant, but as a party, his tenancy was not extinguished, he was not in violation of the foreclosure judgment, and the Sheriff could not compel delivery of possession. Mr. Spodek also maintained that his tenancy could not be extinguished because it came into existence before the purchase upon foreclosure and that use and occupancy was not owing because his wife, as owner of the East 31st St. Building, had given him a sweetheart deal of rent-free usage.

Mr. Spodek also moved, by order to show cause dated May 10, 1991, for an order vacating Justice Aronin's order of February 21, 1989 which granted the injunction which was the basis for the January 25, 1990 final order of contempt. In support of this motion, Mr. Spodek alleges that he had not been properly served with the moving papers for the injunction and, as a result, the IAS Court lacked jurisdiction to grant that relief.

Subsequent to the foreclosure sale, on or about November 27, 1990, the Receiver moved to settle his account stating, *inter alia,* that he faced "extensive problems" when he took over the buildings, which were "in decline." The Receiver averred, *inter alia,* that he made capital improvements, restored services, forestalled rent strikes, cured numerous violations, entered into renewal leases and rented vacant apartments, resolved problems with unions and service suppliers, and instituted a tax certiorari proceeding which resulted in a $425,000 reduction of the 1989-1990 tax assessment for one of the buildings.

The Receiver concluded that he had collected income totalling $2,427,112.05 and disbursed $2,484,368.20. After various adjustments, the Receiver requested $227,123.57, which figure represented a 5% commission, pursuant to CPLR 8004 (a), based upon the sum total of the monies received and disbursed. Since the Receiver had received interim commissions of $153,283.55, he requested an additional $73,840.02. In an amended summary of account, the Receiver reduced the total

net receipts and disbursements upon which commissions could be granted from $4,911,480.25 to $4,542,471.32.

Mr. Spodek objected to the Receiver's account on the grounds, *inter alia:* that the commission was excessive as the 5% should be calculated as a percentage of receipts, not the sum total of receipts and disbursements; that based upon appraisals made for the mortgage, the buildings were in good condition; and that the fee of $145,000 paid to the managing agent was excessive in that the agent was the Receiver's brother-in-law, was in his family's real estate business and performed work which was duplicative of the work performed by the Receiver.

By decision dated June 20, 1991 and order entered October 14, 1991, the IAS Court, *inter alia,* settled the Receiver's account, rejected Mr. Spodek's challenge to the commission formula, and approved the fee of the managing agent, which payments the court found to be nonduplicative based on the size of the properties and the complexity of the problems.

The IAS Court, by decision dated October 8, 1991 and order entered June 14, 1992, granted the Leists' motion, ordered the Sheriff of Kings County to deliver possession of the storage/ office space to the Leists, held Mr. Spodek in civil contempt, and ordered a hearing to determine the appropriate sanction. The court denied Mr. Spodek's motion to vacate the February 21, 1989 injunction and held that Mr. Spodek waived his jurisdictional defense. The instant appeals ensued.

█ With regard to the court's order approving the Receiver's commission, CPLR 8004 (a) provides, in pertinent part: "A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five percent upon the sums received and disbursed by him, as the court by which he is appointed allows".

In *New York State Mtge. Loan Enforcement & Admin. Corp. v Milbank Site One Houses* (151 AD2d 424, 425), we held that: "The statutory language contemplates that the commission paid to a receiver will be a maximum of 5% of the amount which has been both collected *and* disbursed by him. That is, a commission is due upon the total amount which passes through the receiver's hands *(New York Bank for Sav. v Jamaica Towers W. Assocs.,* 49 Misc 2d 230). A double commission, such as requested here, is not recoverable *(People v Abbott Manor Nursing Home,* 112 AD2d 40), and the case to the contrary relied upon by respondent, *Sunrise Fed. Sav. &*

*Loan Assn. v West Park Ave. Corp.* (47 Misc 2d 940), is in error. In a simple case, the amount received and the amount disbursed will be the same *(City of New York v Big Six Towers,* 59 Misc 2d 839). Where it is not, a commission is payable as a percentage of what the court 'decided was the value of the assets which came into the hands of the receivers, and which were disbursed or transferred by them' *(Betz v New Jersey Refrig. Co.,* 231 App Div 553, 558)."

In the instant action, the Receiver relies on *Sunrise Fed. Sav. & Loan Assn. v West Park Ave. Corp. (supra),* the very Nassau County Supreme Court case we declared to be in error in *Milbank (supra).* Although there appears to be no appellate guidance on point in the Second Department, the Fourth Department is in agreement with our interpretation of the statute *(see, People v Abbott Manor Nursing Home, supra).* Further, a later Second Department Supreme Court case, *Resolution Trust Corp. v Preferred Entity Advancements* (157 Misc 2d 683), explicitly rejected a Receiver's entitlement to a double recovery, or a 5% commission on both the receipts and the disbursements.

The Receiver, however, is not entitled to the 5% statutory maximum as of right as the IAS Court clearly has the discretion to award a lower percentage *(see,* CPLR 8004 [a]; *Weckstein v Breitbart,* 141 AD2d 347). In the case at bar, however, based upon the Receiver's submissions, the history of the proceedings and the record as a whole, the IAS Court properly exercised its discretion in intending to award the statutory maximum of 5%, but erred in applying that percentage to the sum total of the receipts and disbursements.

With respect to the managing agent's fee of $145,000, the record is too sparse to ascertain the precise factors on which the award is based. The documentation submitted by the Receiver, which consisted of a single-paragraph summary of services, was not adequate to support the amount of fees paid to the managing agent. Further, there was no affidavit from the managing agent setting forth the services he allegedly performed. The award of fees to the managing agent, therefore, should not have been made without a hearing to determine the issues including the services performed by the managing agent, whether such services were duplicative, and the reasonable compensation for the services rendered *(Wynyard v Beiny,* 187 AD2d 297; *Matter of Ronan Paint Corp.,* 98 AD2d 413).

Lastly, the Receiver concedes that he erroneously transposed the receipt and disbursement accounts but maintains that he corrected his calculations. In light of the foregoing, the Receiver's account should be reexamined and his commission recalculated in accordance with this decision, and the IAS Court is also directed to conduct a hearing to determine the amount of fees payable to the managing agent.

Mr. Spodek next argues that he is not bound by the foreclosure judgment because that judgment explicitly gave the purchasers rights subject to preexisting tenancies. Mr. Spodek maintains that since he was in legal possession of the illegally converted storage space pursuant to a lease, the writ of assistance directing the Sheriff to remove him should not have been issued.

The lease which was purportedly executed between Mr. Spodek, as tenant, and Ms. Spodek, as fee owner of the East 31st St. Building, on May 26, 1986 provides that Mr. Spodek could utilize the commercial office space, with no obligation to pay rent or utility fees, as well as the gratuitous use of interior garage space, for a 10-year period.

RPAPL 221 provides, in pertinent part, that the court may issue a writ of assistance directing the Sheriff to compel delivery of possession of real property when such possession is improperly withheld by "a party, or his representative or successor, who is bound by the judgment".

As previously stated, the foreclosure judgment clearly extinguishes all of the defendants' "right, claim, lien, title interest and equity of redemption" in the building. Since Mr. Spodek made no attempt to assert the legitimacy of his tenancy in opposition to the foreclosure action, which explicitly terminated all of his rights, he has waived that claim *(Money Store v Doner Holding Corp.,* 112 AD2d 284; *Gray v Bankers Trust Co.,* 82 AD2d 168, *lv denied* 58 NY2d 604).

Further, Mr. Spodek did not disclose the existence of the alleged lease until May 1991, more than 2½ years after commencement of the foreclosure proceeding. Remarkably, Mr. Spodek, in December 1989, failed to assert the Spodek lease in support of his motion to vacate a default of the Receiver's contempt motion, but chose to contest the merits by asserting that he had vacated the premises. The inordinate and unexplainable delay in asserting the presence of a lease by defendant casts serious doubts as to the authenticity of the agreement. The IAS Court, which was familiar with the facts

and circumstances of this case, was within its discretion to reject this claim.

Accordingly, that branch of the IAS Court order granting the writ of assistance is affirmed.

■ That branch of the order which denied Mr. Spodek's motion to vacate the injunction dated February 21, 1989 should also be affirmed. Mr. Spodek's attempt to raise a jurisdictional defense to the initial injunction for the purpose of collaterally attacking the resulting contempt order is rejected as an impermissible attempt to circumvent the rule that the appeal of a contempt order does not bring up for review the injunction upon which it was predicated *(see, Parkchester S. Condominium v Pickett,* 189 AD2d 688; *Seril v Belnord Tenants Assn.,* 139 AD2d 401). In any event, Mr. Spodek waived that defense by seeking the vacatur of the contempt order, on the merits, by order to show cause dated December 8, 1989, without raising the issue of improper service of the moving papers *(see, Rubino v City of New York,* 145 AD2d 285; *Taylor v Taylor,* 64 AD2d 592).

Contempt is a drastic remedy which should not issue absent a clear right to such relief *(Usina Costa Pinto v Sanco Sav Co.,* 174 AD2d 487). To sustain a finding of civil contempt upon a violation of a court order, it must appear with reasonable certainty that the order was knowingly disobeyed *(Matter of Department of Envtl. Protection v Department of Envtl. Conservation,* 70 NY2d 233), and if there is any dispute regarding the alleged contemnor's willfulness, a hearing must be held to determine such before the party can be held in contempt *(Usina Costa Pinto v Sanco Sav Co., supra,* at 488; *Babiarz v Gasparini,* 198 AD2d 608).

In the instant action, despite undisputed evidence that he was served with the injunction in March 1989, Mr. Spodek did nothing until December 8, 1989 when he moved to vacate the order of contempt which had been granted, on default, for his failure to obey the injunction and vacate the office space. At that time, Mr. Spodek alleged that he had vacated the space, although a little over a year later Mr. Spodek claimed to still occupy the space, this time pursuant to a lease whose origin and authenticity are, at best, questionable. Mr. Spodek does not dispute the allegations of the Leists and the Receiver that he continues to presently occupy the storage space as an office. Regardless of Mr. Spodek's continually alternating theories of occupancy, the existence of a lease and abandonment, it is

apparent that Mr. Spodek is still in violation of an injunction issued over five years ago. Mr. Spodek, by his conduct during the course of this proceeding, has evinced a callous disregard for judicial mandate, and has flagrantly and intentionally disregarded the IAS Court's injunction issued February 21, 1989.

Mr. Spodek's argument that he could not be held in contempt of the February 21, 1989 order absent a hearing to determine the facts is without merit.

The injunction provides in relevant part that defendants are "enjoined and restrained * * * from taking any action to use or occupy the storage room * * * and * * * directed forthwith to correct the violation issued February 16, 1988, to restore to the legal condition, the alteration of the storage room made into an office".

Mr. Spodek, in his affidavit to vacate the default, avers "I had retained an architect to file plans to legalize the occupancy." This was a clear indication that defendants did not relinquish possession of the storage space and were actively seeking to convert it into an office which was in clear violation of the injunctive order directing that the space be restored to the prior legal condition of a storage room.

In addition, the order directs that defendants forthwith correct the HPD violation, yet the Spodek affidavit, submitted approximately 10 months after the date of the injunction, does not set forth that the violation had been certified as corrected by HPD. Rather, the record appears to show that the February 16, 1988 violation is still pending.

Based on the foregoing, the court was within its discretion to deny defendants' motion without a hearing and entered a final order of contempt on January 25, 1990.

Moreover, the January 25, 1990 contempt order provided the contemnor an opportunity to purge the contempt by surrendering possession of the office space on or before February 15, 1990. It appears from the record Mr. Spodek never relinquished control and possession of the storage area to the Receiver and still presently occupies the space.

In the Leists' motion on appeal, the IAS Court properly held Mr. Spodek in contempt, and ordered a hearing to determine the proper sanction for his failure to vacate the premises pursuant to the foreclosure judgment.

Accordingly, the order of the Supreme Court, Kings County (Gloria Cohen Aronin, J.), entered on or about June 18, 1992,

which, *inter alia,* directed the Sheriff of Kings County to eject defendants from the storage/office space of the East 31st St. Building, adjudged Mr. Spodek in contempt of court for failing to vacate the premises and denied Mr. Spodek's cross motion to vacate the IAS Court's February 21, 1989 order granting an injunction directing Mr. Spodek to vacate the office space, is unanimously affirmed, with costs.

Order, same court and Justice, entered on or about October 14, 1991, which, *inter alia,* settled the final account of the Receiver and approved certain commissions to be paid to the Receiver as well as certain fees to the managing agent, and determined the account to be mathematically correct, unanimously reversed, without costs, to the extent appealed from, on the law, the facts and in the exercise of discretion, the matter remanded to the IAS Court to reexamine and recalculate the Receiver's commissions in accordance with this decision and to hold a hearing to determine the amount of fees payable to the managing agent.

SULLIVAN, J. P., ELLERIN, ROSS and ASCH JJ., concur.

Order, Supreme Court, Kings County, entered on or about June 18, 1992, affirmed, with costs; order, same court and Justice, entered on or about October 14, 1991, reversed, without costs, on the law, the facts and in the exercise of discretion to the extent appealed from, the matter is remanded to the IAS Court to reexamine and recalculate the Receiver's commissions and to hold a hearing to determine the amount of fees payable to the managing agent.