**RESOLUTION TRUST CORPORATION, as Conservator of Columbia Banking Federal Savings Association, Plaintiff,**

v.

**Sheryal A. VOLPE, Volran Development Corp., People of the State of New York by State Tax Commission, Defendant.**

No. 92–CV–6338L.

United States District Court, W.D. New York.

Jan. 23, 1996.

Jane A. Conrad, Jeffrey P. Stone, Rochester, NY, Patricia M. Carroll, Resolution Trust Corporation, Legal Division, Valley Forge, PA, for plaintiffs.

Edward J. Degnan, Mendon, NY, for defendants.

### *DECISION AND ORDER*

LARIMER, Chief Judge.

### *BACKGROUND*

This is a foreclosure action which was commenced by Columbia Banking Federal Sav-

ings and Loan Association ("Columbia") in New York State Supreme Court, Monroe County. After Resolution Trust Corporation ("RTC") was appointed receiver for Columbia, the action was removed to this court in August 1992.

Prior to removal, State Supreme Court Justice Donald J. Wisner appointed Shane P. Mallory as receiver for the real property ("the property") located on East Ridge Road in Rochester. The property consists of several small commercial buildings which generate rent as income. On June 30, 1995, the property was sold at public auction pursuant to previous orders of this court. The court confirmed the sale on August 28, 1995.

Mallory now moves before this court for an order settling his accounts, fixing his commissions and attorney's fees, discharging the undertaking, and directing payment of the remaining balance in his hands.

Mallory seeks a total receiver's commission of $25,126.83 which is 5% of $502,536.57, less $7,000 previously paid to him as an interim award, for a balance due as receiver's commissions of $18,126.83. RTC does object to the amount of these receiver's fees. Mallory also seeks attorney's fees in the sum of $10,-944.00 plus disbursements. The attorney's fees request is not challenged by RTC.

To understand the relevance of the events in question, it is necessary to review the governing statute, N.Y.C.P.L.R. § 8004, which states in pertinent part:

**(a) Generally.** A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows ...

**(b) Allowance where funds depleted.** If, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver.

Under § 8004, then, the receiver's commission can be less than or equal to, but no more than, 5% of the funds received and disbursed by him.[1] "Expenditures" are not expressly limited in such a manner, except that they must have been "necessary."

The dispute here centers around Mallory's employment of a managing agent for the property. The order appointing Mallory as receiver authorized the receiver, *inter alia*, "to employ an agent, if it shall be deemed necessary, to rent, to collect the rents, and to manage the property, and to pay such agent out of the rents received the reasonable value of the agent's services ..." *See* Receiver's Reply Affidavit Ex. A.

After his appointment, Mallory hired Lawrence Management ("Lawrence") to act as managing agent. Mallory is President of Lawrence, and that fact is at the heart of this fee dispute. At the time of his appointment, Mallory and Columbia agreed that Mallory would receive a receiver's commission of 5% of sums received by him (his limit under § 8004), and that Lawrence would receive an additional 3.5% management fee. *See* Receiver's Reply. Affidavit Ex. B. Although Columbia was represented on the foreclosure action by the law firm of Harter, Secrest & Emery ("Harter, Secrest")—the same firm that represents RTC now—Harter, Secrest was not involved in this arrangement concerning fees or commissions. *Id.*

Pursuant to this agreement, Mallory directed payment to Lawrence of $16,389.58 in management fees incurred during the course of his receivership. He now seeks $18,126.83 in receiver's commissions, and attorney's fees.

RTC does not object to the attorney's fee request, but only to the amount sought for the receiver's commission. RTC's objection is based on the fact that $16,389.58 has already been paid to Lawrence as agent and that Mallory's request duplicates fees al-

---

1. The reference in § 8004 to "sums received and disbursed" means not the total of sums received *plus* sums disbursed, but simply the total amount which passes through the receiver's hands. *Coronet Capital Co. v. Spodek*, 202 A.D.2d 20, 26, 615 N.Y.S.2d 351 (1st Dep't 1994).

ready paid. RTC contends that because the receiver, Mallory, is president of the managing agent, Lawrence, Mallory's commission should be reduced by the amount paid to Lawrence. RTC maintains that Mallory is simply trying to circumvent § 8004's 5% cap by paying fees to his own company as management fees, and then recovering virtually the same fees in his capacity as receiver.

### DISCUSSION

■ Although none of the reported cases appears to be directly on point, two things seem clear from the statute and the case law: first, that the receiver is not automatically entitled to a full 5% commission; rather, the appropriate amount of the commission is determined according to the nature and value of the services performed. Second, expenses (such as agent's fees) reasonably incurred by the receiver will not necessarily reduce the proper amount of his commission, *unless* those expenses are for work performed by others which effectively reduced the amount of work performed by the receiver himself. In other words, the receiver may employ a managing agent, but to the extent that the agent performed services that would otherwise have been performed by the receiver, the cost of those services will be included only among the receiver's compensable *expenses,* and not in the receiver's commission. Under this analysis Mallory's fee request must be reduced because I believe some of the services performed by the receiver and the managing agent were duplicative.

The starting point is the statute itself, C.P.L.R. § 8004, two aspects of which are particularly important here. First, § 8004(a) limits the receiver's commissions to "five per cent upon the sums received and disbursed by him ..." Second, § 8004(b) provides that if there are no funds in the receiver's hands at the end of the receivership, the court may direct the party who moved for the appointment of the receiver to pay the receiver his compensation and attorney's fees, "in addition to the necessary expenditures incurred by the receiver." C.P.L.R. § 8004(b).

Since the receiver in the instant case has adequate funds available to pay his compensation and expenses in the amounts sought,

the pending motion is governed by § 8004(a). Subsection (b), however, is noteworthy for its indication that "expenses" are distinct from the receiver's compensation. In other words, expenses necessarily incurred by the receiver are not to be subtracted from his commission.

In support of its position, RTC relies upon *Siegel v. Bromanbro Realty Corp.,* 23 A.D.2d 634, 257 N.Y.S.2d 107 (1st Dep't 1965) (mem.), in which the court reversed an award of commissions to a receiver who had already paid himself 5% of the sums received and disbursed for management of the premises. The court said that the receiver, "though he was authorized to employ an agent to rent and manage the subject premises, was not entitled to receive a salary or commission for management services in addition to the commissions provided for by CPLR 8004." *Id.* While the receiver could not simply call himself a "manager" as well as a receiver and thus receive additional compensation, then, the court did not indicate that his receiver's commission would necessarily have had to be reduced if he had hired a separate managing agent.

Some cases suggest that a full award of commissions to the receiver, and a full award of expenses for the employment of a managing agent, can both be made, as long as the latter are justified and the services performed by the receiver and the agent were not duplicative.

In *Federal Home Loan Mortgage Corp. v. S.E.A. Yonkers Associates,* 869 F.Supp. 187 (S.D.N.Y.1994), a receiver who had collected $4566 in rents sought $4233 in compensation, plus $4927 for a managing agent's fee. The court said that amounts beyond § 8004(a)'s 5% limit may be awarded even as the receiver's commission (as opposed to expenses) "under the doctrine of quantum meruit if the statutory amount would be 'manifestly unfair.'" *Id.* at 188 (citing *American Sav. Bank v. Saleski Dev. Inc.,* 812 F.Supp. 28, 32 (S.D.N.Y.1993), and *Klemczyk v. Levin,* 144 Misc.2d 124, 543 N.Y.S.2d 609 (Erie Co.Ct. 1989)). Stating that it would have been unfair in this case to award a 5% commission, which would have totalled only $228, the court awarded the $4233 sought by the re-

ceiver. Stating that "[t]here is no statutory standard for the compensation of the managing agent," and that the agent's services here were adequately documented, the court also awarded the full $4927 for the agent's fee.

I do not believe, then, that Mallory's commission *must* be reduced by the amounts paid to Lawrence. Nevertheless, both amounts must be adequately documented. If the services were duplicative, they are compensable only once, and if they were unnecessary, they are not compensable at all.

In *Independent Properties Co. v. Mast Prop. Investors, Inc.,* 148 A.D.2d 849, 539 N.Y.S.2d 121 (3d Dep't 1989) (3–2 decision), for example, the lower court awarded the receiver the full 5% commission for his services. His affidavit of work performed was very general, however, and it appeared that many of his duties had been delegated to an agent, which had been paid $43,000. Stating that "[i]t is the receiver's burden to justify his account," the court remanded the case for recalculation upon submission of further affidavits. *Id.* at 850, 539 N.Y.S.2d 121. Notably, the court said that "[i]f services of the receiver are performed by others, the receiver's commission should be reduced," because a "property owner should not have to pay twice for the same services." *Id.* Thus, the court said, the work performed by the agent did not entitle the receiver to receive payment for that work as well.[2]

Similarly, the court in *East Chatham Corp. v. Iacovone,* 26 A.D.2d 433, 275 N.Y.S.2d 53 (1st Dep't 1966) (per curiam), *appeal dismissed,* 19 N.Y.2d 687, 278 N.Y.S.2d 876, 225 N.E.2d 564 (1967), modified an award to a receiver by disallowing the fees of a managing agent employed by the receiver on the ground that the receiver had not met his burden of showing the necessity of retaining the agent. The court noted that the property in question was a hotel with a full staff and that the agent, who had no prior hotel experience, gave only cursory supervision to hotel activities.

In the case at bar, then, Mallory is entitled to receive a commission not to exceed 5% of the funds received and disbursed, as well as fees for Lawrence, to the extent that the work performed by Lawrence was necessary.

The fact that Mallory is president of Lawrence does not in itself mean that Mallory's commission must be reduced by the amount of fees paid to Lawrence. There is no dispute here that Mallory was authorized to employ a managing agent, and to the extent that Lawrence's fees are adequately documented, I see no reason why they should not be compensated. In *Coronet Capital Co. v. Spodek,* 202 A.D.2d 20, 615 N.Y.S.2d 351 (1st Dep't 1994), there was objection to the receiver's compensation request on the ground that, *inter alia,* a fee paid to the managing agent was excessive in that the agent was the receiver's brother-in-law, was in the receiver's family's real estate business, and performed work that was duplicative of that performed by the receiver. Although the court remanded the case for a hearing on the ground that the record was too sparse to determine the basis for the agent's fee, the court did not suggest that the fee should have been disallowed simply because of the relationship between the receiver and the agent. As long as the fee had a sound basis, then, it was compensable.

At the same time, however, I find that Mallory has not carried his burden of showing that he should receive a full 5% commission in addition to the fees paid to Lawrence. In support of his motion, Mallory has submitted a record of his expenses, which includes amounts paid to Lawrence for "Management Fees." He has also submitted an affidavit summarizing what he did as receiver and what Lawrence did as managing agent. He states, for example, that as receiver he prepared and submitted monthly reports to the court and various other parties, negotiated lease renewals with the tenants, reviewed and signed repair contracts, and so on. Lawrence collected the rent each month, responded to tenant complaints, showed the premises to prospective tenants, etc.

---

2. Two justices dissented, opining that the record was adequate to show that the receiver performed many duties other than those delegated to agent. They did not, however, dispute the basic proposition that the receiver must show that the agent's services were necessary and not duplicative of the receiver's own services.

Nevertheless, there is clearly some overlap in some of these services. For instance, Mallory states that he conducted bi-monthly inspections of the premises, and that Lawrence conducted weekly inspections. Lawrence conducted "daily bookkeeping" activities, but Mallory "reconcil[ed] the checking account" and "track[ed] an accounting for all funds" "on a monthly basis . . ." Lawrence collected the rent monthly, but Mallory collected past due rents "and additional rents due . . ." Thus, many of these services were either similar, but performed at different time intervals, or simply represented different aspects of the same general activity (*e.g.,* rent collection). In addition, the allocation of some of these services to Mallory in his capacity as receiver, rather than his capacity as Lawrence's president, is necessarily somewhat arbitrary. For example, he states that as receiver he "performed quarterly audits on all leases to ensure that the management company was properly billing tenants for their rents and for additional rents." It is not clear, however, that he would not have performed similar tasks as Lawrence's president in any event. In sum, the receiver has failed to carry his burden and convince me that all of his activities as receiver were significantly different from the activities of the agent that he had hired to manage the building. Therefore, there is ample basis to reduce the receiver's commission to something less than the statutory maximum of 5%.

■ I am also not persuaded that RTC should be bound by Columbia's apparent consent to Mallory receiving a 5% commission, and to Lawrence's additional receipt of a 3.5% management fee. First of all, the parties have no capacity to bind the court as to the commission paid to the receiver. The receiver receives his appointment, his orders and his compensation from the court, not the parties. A receiver "is the court's agent, not the parties', and . . . he cannot punctuate the completion of his receivership duties with a private compensation arrangement beyond the statute and the glimpse and grasp of the indispensable ultimate principal—the appointing court." *In re Kane,* 75 N.Y.2d 511, 515, 554 N.Y.S.2d 457, 553 N.E.2d 1005 (1990) (applying N.Y.Bus.Corp.L. § 1217).

Furthermore, it is clear that that agreement was between Columbia and Mallory only. There is no evidence that RTC ever consented to it; in fact, to the extent that RTC has ever taken a position on the issue, it appears that RTC has consistently opposed this fee arrangement. *See, e.g.,* Decision and Order, Jan. 20, 1995 (noting that RTC "argue[d] that any award of compensation to Mallory should be reduced by the amount that he paid to the management company"). Also, Harter, Secrest, never consented to the arrangement, either in its capacity as attorney for RTC or for Columbia. In a letter dated September 9, 1992, Mallory's then-attorney, Bradley P. Kammholz, Esq., stated to Walter Bay, Esq., a Harter, Secrest attorney, that Bay had told him that Bay "was not involved in any discussions or negotiations concerning such commissions and fees . . ." Mallory Affidavit (Item 34) Ex. B. Under these circumstances, RTC should not be bound by Columbia's consent. *See East Chatham,* 26 A.D.2d at 435, 275 N.Y.S.2d 53 (plaintiff, which was assignor of interest in mortgage, had no knowledge of alleged oral consent of attorney for original mortgagee to appointment of managing agent, and therefore was not precluded from objecting to fee for agent's services).

After reviewing the materials submitted in support of the receiver's motion, then, I find that the amounts paid to Lawrence for its management fees were reasonable and justified. Indeed, RTC has not suggested that those fees are themselves excessive; RTC argues only that those fees should be subtracted from Mallory's requested commission.

I also find, however, that Mallory is not entitled to the full 5% commission that he seeks. Although there is some evidence that Mallory and Lawrence performed some separate duties, it does appear that many of the services performed by Lawrence effectively reduced the amount of work that Mallory was required to perform as receiver. Furthermore, as explained above, the divisions and allocations of work between Mallory and Lawrence are to some extent arbitrary and suggest that in fact there was significant

overlap in the work performed by each of them.

Based on the record before me, then, I find that Mallory, as receiver, is entitled to a total award of commissions in the amount of $15,076.10, which is 3% of the total funds received. Therefore, the balance due Mallory for his commissions is $8,076.10.

### CONCLUSION

The motion by the temporary receiver, Shane P. Mallory, to settle the accounts of the temporary receiver and for other relief (Item 21), is granted in part. The court confirms the account of the receiver, discharges him and the surety on the undertaking, and cancels the undertaking. The receiver's commission is fixed at 3% for a total award of $15,076.10 and a balance due of $8,076.10. The receiver is also awarded $10,-944 in attorney's fees, plus $524.01 in disbursements, with the total amount due to the receiver's attorneys of $11,468.01. Upon payment of the above amounts, the receiver is directed to pay any balance remaining in his hands to plaintiff RTC Mortgage Trust 1992–N1.

IT IS SO ORDERED.