Katz v Glassworks LLC (2004 NY Slip Op 50161(U))

[*1]

Katz v Glassworks LLC

2004 NY Slip Op 50161(U)

Decided on March 15, 2004

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 15, 2004

Supreme Court, New York County,
 MICHAEL KATZ, STANLEY GALLANT, JACK STERNKLAR, LAWRENCE J. MALITSKY, HILDA FORMAN, Plaintiffs,
against
GLASSWORKS LLC, DOWNING DEVELOPMENT CORP., ERROL BIENSTOCK, CHAMPION COURIER, STATE OF NEW YORK, CITY OF NEW YORK, "JOHN DOE #1" through "JOHN DOE #60," Defendants.
Index Number 120329/2001

Receiver:
Fran M. Jacobs, Esq. , as Receiver
Duane Morris LLP
380 Lexington Ave.
New York NY 10168
(212) 692-1029
For Plaintiffs:
Michael R. Bush, Esq.
Einig & Bush, LLP
420 Lexington Avenue, Suite 1727
New York NY 10170
(212) 983-8866
For Defendants:
Robert P. Baron, Esq.
60 East 42nd St.
New York NY 10165
(212) 757-5800, x 240

PAUL G. FEINMAN, J.
Papers considered in review of this motion to settle account:
[*2]
Papers Numbered
Notice of Motion and Affidavits Annexed.......... 1 
Affidavit in Opposition...................................... 2 
Replying Affidavits............................................ 3 
Reply Affirmation.............................................. 4 
PAUL G. FEINMAN, J.:
Upon consideration of the above-enumerated papers, and after oral argument, the motion by the receiver for a judicial settlement of the receiver's final account and to fix a commission, is granted and the account settled and approved to the extent detailed in this decision. The foregoing is subject to the submission by the receiver of Form UCS 875 (Statement of Approval of Compensation), accompanied by a proposed order and an affidavit setting forth the accounting. The branch of the motion which seeks legal fees is denied.
FACTS
On March 20, 2002, the movant was appointed [FN1] as the receiver of the rents, issues and profits of a seven-story premises located at 141-143 West 24th Street, New York, New York, during the pendency of a mortgage foreclosure proceeding (Not. of Mot. Ex. A, Order Appointing Receiver). The foreclosure proceeding was recently resolved. The receiver accordingly moves pursuant to CPLR 6404 for an approval and settling of account, and for a fixing of her commissions and fees for legal services rendered, along with discharge of her duties as receiver and authorization to cancel the Receiver's Bond executed on March 25, 2002. In addition, she moves for a provision for the distribution of any funds remaining in the bank account.
As an initial matter, although the receiver submits an affidavit in support of her motion, and includes several exhibits, some of which concern the receivership finances, she has not submitted an affidavit of accounting which sets forth in one document, the amounts of money received from each source, and the expenditures, including to whom paid and by date. Accordingly, she is directed to submit such an affidavit along with the other documents herein requested of her.
According to the receiver, the parties in this proceeding agreed that the building, a mixed-use premises, should remain vacant with the exception of the ground floor, rented to Champion Courier, who paid monthly rent, and the penthouse, occupied by defendant Bienstock. It was the parties' belief that the building would be more easily and profitably sold if there were no other tenancies. It was also agreed that Bienstock would not pay rent for an agreed upon period of time, after which he would become obligated to pay rent. Bienstock supervised the building renovations (Bienstock Aff. In Opp. ¶ 3). After the agreed upon period for the forbearance on rent elapsed, the receiver made a motion to require Bienstock to pay rent. The receiver hired a consulting firm, Brown Harris Stevens, to help determine the fair market rental value not only of the penthouse, which was hotly contested by Bienstock, but of the rest of the [*3]premises' floors as well.[FN2] Ultimately a compromise was reached with Bienstock and he began to pay an agreed upon rent through the month that he moved out of the premises (Not. of Mot., Jacobs Aff. ¶¶ 3-11).
The receiver argues that according to the figures reached by the consulting firm, if the premises had been entirely rented, it could have generated up to $30,000.00 a month in income for a total of $600,000.00 during the course of her receivership (Jacobs Aff. ¶ 11; Not. of Mot. Ex. H, Rental Value Analysis). Instead, she only collected rents from the ground floor tenant and a lower than market value rent for only a few months from Bienstock for the penthouse. Concerning the latter, she states that there is a difference of $42,000.00 in the amount of rent she actually collected for Bienstock and the amount of rent she could have collected if he had paid at market rates (Jacobs Aff. ¶ 9). She concedes, however, that if new leases had been negotiated, "it is unlikely that the parties would have been able to resolve this matter." (Jacobs Aff. ¶ 14[a]).
Under the terms of the appointment, the receiver opened an account at Citibank for the deposit of all receipts. She forwarded copies of all monthly statements to plaintiffs' counsel. Although she apparently first attempted to hire a managing agent for the building, she later realized that because the building was largely vacant, a managing agent would not have been cost effective. She therefore handled the bills for the upkeep of the premises and, in addition, arranged and paid for an individual who worked as a superintendent at a nearby building to oversee the physical maintenance of the premises. The receiver avers that her only disbursements were to the acting superintendent, the consulting firm, and for the payment of building expenses such as fuel, taxes, inspections and the like. She includes a Schedule of Disbursements showing a total of more than $64,000.00 (Not. of Mot. Ex. K).[FN3] According to her affidavit, as of December 4, 2003, she had disbursed a total of $65,249.30 (Jacobs Aff. ¶ 14[b]; Reply Aff. ¶ 14).
The receiver received a total of $122,131.66 as of November 2003, with an additional rental payment from Champion still to arrive (Jacobs Aff. ¶ 14). She avers that the balance remaining is approximately $56,742.14 (Reply Aff. ¶ 14). She moves for the distribution of these funds as well as the turn-over of the $7,500 security deposit she holds for Champion. In addition, she moves pursuant to CPLR 8004, for a commission of $30,000. Plaintiffs do not oppose her motion, and "consent to the confirmation of her accounting and her request for fees as stated" (Bush Aff. in Reply ¶ 5). Defendants oppose certain aspects of the motion, as set forth in the legal discussion which follows.
LEGAL ANALYSIS
Article 64 of the CPLR governs receiverships. An Article 64 receiver is appointed by the court to take control of designated property and see to its care and preservation during litigation (Decker v Gardner, 124 NY 334, 338 [1891]). Pursuant to CPLR 8004, a receiver is entitled to a [*4]commission of no more than five percent of the sums received and disbursed by the receiver (CPLR 8004). A commission is payable based on the value of the assets which came into the hands of the receiver (Eastrich Multiple Invest. Fund, LP v Citiwide Dev. Assocs., 218 AD2d 43, 44 [1st Dept. 1996]). However, a "'receiver is not entitled to the statutory maximum as of right; the court has discretion to award a lower percentage'" (First N.Y. Bank for Bus. v 418 W 49th St. Realty Corp., 252 AD2d 460, 460 [1st Dept. 1998], quoting Key Bank v Anton, 241 AD2d 482, 483 [2d Dept. 1997]). A receiver must justify his or her account (Independent Props. Co. v Mast Prop. Investors, Inc., 148 AD2d 849, 849-850 [3d Dept. 1989]). 
Based on the fact that the receiver collected receipts totaling $122,131.66 in connection with the premises, the statutory maximum allowable commission of five percent would be $6,106.58. However, the receiver moves for a commission of $30,000. This figure represents five percent of the $600,000.00 that could have been payable to her if she been able to lease the premises for the fair market value, as determined by the consulting firm, rather than acceding to the parties' request to leave the building largely vacant. Obviously, such a calculation assumes that each floor would have immediately been rented and that there would have been no negotiations, common in commercial rentals, that would have resulted in lowered rents.[FN4] In justification of her claim, the receiver avers that she has devoted more than 51 hours to the matter because the building was in "financial disarray" at the time of her appointment, that she had repeated discussions with Bienstock about bills concerning periods pre-dating her appointment for which she refused to pay, that she had to work out arrangements with various suppliers to provide services to the building by assuring them that future payments would be timely, in addition to her continued efforts to obtain rent payments from Bienstock, including making an application to the court for use and occupancy (Jacobs Reply ¶ 10). In the latter matter, the receiver avers that a partner at her law firm spent 10.6 hours preparing the application. The partner's billing rate is $330.00 per hour and the total for that work is $3,498.00 (Jacobs Aff. ¶ 16). The receiver also requests reimbursement for her time spent preparing the account of the receivership. With a billing rate of $440.00 per hour, she claims $1,540.00. In sum, the receiver claims the total legal fees due to her firm is $5,038.00 (Jacobs Aff. ¶ 17).
The receiver's motion is partially opposed by defendant Bienstock,[FN5] who argues that she should not be awarded the full five percent commission which is awarded when a receiver is required to perform extensive service such as correcting and removing violations, making emergency repairs to the property, and instituting dispossess proceedings (Bienstock Aff. in Opp. ¶ 6). Bienstock argues that the receiver should be awarded a commission representing two and a half percent of the amounts received, or $3,053.29. He characterizes her work as merely depositing rent checks, paying a few bills each month, and making the one motion to compel him to pay use and occupancy (Bienstock Aff. in Opp. ¶ 5). He also opposes payment of legal fees.
[*5]
The court finds that the receiver's argument that her commission should be calculated using a valuation of the potential receipts is unpersuasive and has no basis in the applicable statutes or in governing case law. She argues that she should not be penalized, in effect, for acceding to the request of the parties not to rent the vacant floors of the premises and garner more income which would potentially increase her amount of commission (Jacobs Reply ¶ 7). However, this unnecessarily and incorrectly pits the interests of the parties against the interests of the receiver. Her function as receiver was to preserve the property during litigation, which, by all accounts, she undisputably performed well.
Nothing in the statute permits a court to fix a commission at greater than five percent based on "unusual services" (Bowery Sav. Bank v 566 Amsterdam Ave. Corp., 32 Misc 2d 459, 460 [Sup. Ct., New York County 1961]). cf., Coronet Capital Co. v Spodek, 202 AD2d 20 [1st Dept. 1994] [commission of five percent was justified where, in the course of the two years in which the receiver was acting, he made capital improvements to the two buildings at issue, restored services, forestalled rent strikes, cured numerous violations, entered into renewal leases and rented vacant apartments, resolved problems with unions and service suppliers, and instituted a tax certiorari proceeding which resulted in a reduction in the tax assessments]). Here, the court finds that, on balance, after weighing all the relevant factors, the receiver's commission should be fixed at five percent, which is the maximum allowable. However, nothing supports the receiver's request for a commission based on something other than actual receipts. Accordingly, the court fixes the commission at $6,106.58.
Turning to the legal fees, the March 15, 2002, Order Appointing Receiver authorizes the receiver to institute and carry on all legal proceedings necessary for the protection of the premises. The receiver is herself an attorney and has the ability to carry out any legal proceedings necessary. When a receiver is an attorney, it is expected that he or she will perform customary legal duties connected with his or her receivership (Martini v Martini, 284 AD2d 510 [2d Dept. 2001]). Thus, the suggestion by the receiver that she should be reimbursed as an attorney for her preparation of the account is in error.
The receiver also claims outstanding legal fees generated in connection with the motion made to compel Bienstock to pay use and occupancy, which arose out of the terms of a stipulation dated May 28, 2002 (Not. of Mot. Ex. E). Bienstock objects to this prong of her motion, arguing that payment of the claimed $3,498.00 fee to the receiver's firm, of which the receiver is a partner, would, in essence, provide the receiver with compensation in excess of her statutory commission.
Here, the Order Appointing Receiver signed by the previously-assigned Justice does not explicitly give the receiver the power to employ counsel. Article 64 expressly provides that "a receiver shall have no power to employ counsel unless expressly so authorized by order of the court" (CPLR 6401[b]). It appears that the receiver did not request permission prior to retaining an attorney at her law firm to carry out certain legal proceedings. The current Rules of the Chief Judge, which became effective June 1, 2003, provide that "no person associated with a law firm of [the] receiver . . . shall be appointed as counsel to that receiver. . . unless there is compelling reason (22 NYCRR §36.2[c][8]). The prior Rules of the Chief Judge were silent concerning the receiver's use of her own law firm.
Here, the receiver was appointed in March 2002 and her use of her own firm apparently [*6]took place in late 2002 and early 2003. Thus, although CPLR 6401[b] applied, the amended Part 36 of the Rules of the Chief Judge did not yet apply. In this instance, the receiver claims it was necessary to hire an attorney at her law firm who could bring an order to show cause in order to obtain rental payments from Bienstock. This motion cannot be seen to be above and beyond the normal routine duties of a receiver who is also an attorney. She did not apply to the court for permission to hire counsel, and has not explained why she needed to hire another attorney to handle the matter. When services rendered by counsel did not appear to have been extraordinary and the receiver is herself an attorney, the sum awarded to the receiver includes the counsel fees (see, Strober v Warren, 84 AD2d 834 [2d Dept. 1981] [deducting counsel fees awarded from amount awarded to receiver]). Here, the hiring of counsel was simply not authorized by the appointing order, regardless of applicability of Part 36. Even under the prior Rule 36, receivers who are also attorneys were not awarded legal fees for work they performed qua receiver. To do so would amount to a double-dipping that circumvents the statutorily fixed rate of compensation based on a percentage of receipts. Accordingly, the receiver's request for reimbursement of attorney fees is denied.
A receiver is entitled, in addition to the statutory commission, to be reimbursed for expenditures which were necessary to preserve the receivership property and authorized by the order appointing him or her (Hirsch v Peekskill Ranch, Inc., 100 AD2d 863 [2d Dept. 1984]). Here, it appears that the receiver only expenditure was $50.00 which she personally deposited in March 2002, to open the receiver's account at Citibank (Not. of Mot., Jacobs Aff. ¶ 11; Ex. I). She is to be reimbursed $50.00.
Finally, the parties have agreed by stipulation that the receiver shall turn over $7,500.00, which represents the security deposit for Champion Courier, to defendant Glassworks, LLC.
CONCLUSIONFor the reasons set forth above, the motion by the temporary receiver seeking approval and confirmation of her account and a fixing of the commission is granted to the extent that the commission is fixed at $6,106.58. The receiver shall submit a Form UCS 175 (Statement of Approval of Compensation)[FN6], along with an affidavit of accounting, and a proposed order based on this decision to the attention of the Fiduciary Clerk. The branch of the motion which seeks an award of legal fees in addition to the commission is denied. The receiver may turn over to the defendant Glassworks, LLC the $7,500.00 held as security for Champion Courier.
This constitutes the decision of the court. The court has mailed copies of this decision to the receiver and counsel for the parties.
Settle Order.
 New York, New York J.S.C.
Decision Date: March 15, 2004
Footnotes

Footnote 1: This appointment was made by another Justice of the Supreme Court who is now retired. Accordingly, the matter was reassigned to IA Part 7.

Footnote 2:Bienstock disputes that the individual floors were in habitable shape, as they had "rudimentary kitchens and bathrooms, the 2nd and 4th floors having only a lavatory consisting of a old toilet and old sink and four bare exterior walls." (Def. Memo of Law unnumbered pp. 1-2). He contests the valuation placed on the penthouse and on the other floors of the premises (Aff. in Opp. ¶¶ 3,5).

Footnote 3:There are also bank checking fees, totaling $170.22 (Not. of Mot. Ex. L).

Footnote 4:The first, second, and fourth floors are listed as commercial spaces on the certificate of occupancy (Bienstock Aff. in Opp. ¶ 3).

Footnote 5:None of the other defendants has submitted papers in this action. Bienstock is a member of The Glassworks LLC, and their counsel, Robert Baron, also appears to represent Downing Development Corp.

Footnote 6: This form is available through the Unified Court System's website at www.ny.courts.gov. For further assistance in settlement of the order, the receiver is directed to contact Ira Turkfeld, Principal Court Clerk, Fiduciary Services, Supreme Court, 60 Centre Street, Room 311.