In the Matter of the Dissolution of T. J. RONAN PAINT CORP. JOHN DORAN et al., Respondents; EDWARD J. LENNON, JR., et al., Appellants.

First Department, December 1, 1983

APPEARANCES OF COUNSEL

*Lother Nachman* and *Arthur Markewich* for temporary receiver-respondent.

*Herbert F. Roth* of counsel (*Finley, Kumble, Wagner, Heine, Underberg & Casey,* attorneys), for appellants.

*James G. Meade* and *Richard A. Librett* of counsel (*Munley, Meade, Burns & Nielsen, P. C.,* attorneys), for respondents.

OPINION OF THE COURT

*Per Curiam.*

This proceeding, commenced February 28, 1980, seeks an involuntary judicial dissolution of T. J. Ronan Paint Corp. (Ronan) pursuant to section 1104 of the Business Corporation Law upon the following grounds: (1) there exists internal dissension between two groups of equal shareholders which has so frustrated the corporation that dissolution would be beneficial to the stockholders; (2) the directors are so divided in the management of the affairs of the corporation that the votes needed for corporate action cannot be obtained; and (3) the shareholders are so divided that the votes necessary to elect directors cannot be secured.

Ronan is a domestic corporation, with its principal place of business at 749 East 135th Street, in the South Bronx. It is engaged in the business of manufacturing and selling a line of specialty paints. The principal antagonists in the conduct of the affairs of the corporation who brought about this proceeding are Edward J. Lennon, Jr. (Lennon), and John Doran (Doran), each of whom owned or controlled through their respective families, 50% of the outstanding shares of stock. Doran and Lennon are also the sole directors of the corporation and its only officers, Lennon serving as president and Doran as treasurer.

The dispute as to the operation and management of the corporation's affairs began in the mid-1970s and intensified in March of 1976, when Lennon commenced an action

against the Dorans for fraud, conversion and corporate waste. It has been suggested that the protracted litigation aggravated an already heated situation and resulted in further turmoil in the management of the corporation's affairs. In February, 1980, petitioners brought this proceeding, claiming that Lennon had taken over exclusive management of the corporation, ignoring the rights of the Doran shareholders and excluding Doran from participation in corporate affairs. Among the allegations, it was claimed that Lennon had opened a bogus bank account, withheld payment of salaries to Doran and other employees and refused to hold directors' meetings. Despite Lennon's denial of significant internal dissension and his reliance upon the fact that, from a business standpoint, the corporation had been operated profitably, on July 18, 1980, Justice MERCORELLA found that the massive court files evinced "bitter antagonistic dissension * * * between the parties." It was observed that the two principals had consumed more court time in litigating claims involving this corporation than any other group of litigants in the court's experience, and that there had been attempts to secure the intervention of the District Attorney's office in assault and other charges. The court held the corporate impasse to mandate dissolution, finding the two factions hopelessly deadlocked so as to be harmful to the continued success of the corporation, such clearly established by four years of "corporate warfare", during which Doran was accused of theft, allegedly beaten, denied his salary, and locked out of the corporate offices, which, as a result were exclusively presided over by Lennon. Accordingly, the application was granted to the extent of appointing a temporary receiver to take possession of the property, administer the affairs of the corporation and effect a final plan of dissolution. The receiver was appointed by order issued October 8, 1980.

On March 5, 1982, the temporary receiver moved for an order extending the time to file a final account, approving his interim accounting for the 14-month period ending December 31, 1981 and permitting the payment to his attorney of reasonable counsel fees in the sum of $27,186.43 for services rendered during the period. The intermediate accounting, prepared in conjunction and consultation with an accounting firm, reflected gross receipts

for the period in the sum of $2,218,916.93 and expenditures in the sum of $2,161,974.94. The petition requested payment to the receiver of an interim commission of $228,310.06, as 5% of the sums received and disbursed by the receiver (CPLR 8004), plus $1,647.50 in transportation expenses. The extension to file a final account was deemed necessary because of other pending litigation and claims, including a proceeding pertaining to the Ronan pension plan, and to the unresolved tax claims, in addition to the prospect of a settlement here, which had been attempted without any success because of the antagonism between the parties. Further obstacles to final dissolution included the pendency of payroll claims for the period 1977-1980, a substantial claim by Doran for back salary, and the fact that the owner of the real estate, on which Ronan conducted its manufacturing operation, was Dorlen Realty Corporation, likewise equally owned by the two principals of Ronan. Ronan, the sole occupant of the building, had no lease and there was an outstanding claim for arrears in rent in the sum of $10,333. While conceding that final dissolution had been unduly delayed, the receiver attributed the delay in formulating a meaningful plan to the hostility between the parties and the intense opposition which he had encountered from the outset and at every stage in the proceeding. He opined that any plan of dissolution should include some provision concerning the real estate and resolution of outstanding claims involving the pension plan and back salary.

Doran, for the most part, supported the receiver's application but sought to adjudicate his claim for back salary as an incident to effecting dissolution. Lennon, however, opposed the application, arguing that the commission and counsel fees were excessive and the interim accounting was inadequate, since it lacked a representation by the accountant that it was prepared " 'in conformity with usual and customary accounting procedures.' " He further claimed that the delay in formulating a final plan was unwarranted and was harmful to the financial security of the business, contending that the business operated at a deficit as a result of the financial drain imposed by the receivership. He suggested an immediate, private sale,

with each party to submit a sealed bid. As to the application for interim commission, Lennon contended that section 1217 of the Business Corporation Law, not CPLR 8004, directed the maximum permissible rate of commission, which, in this case, would be no more than $23,904.46. According to Lennon, the receiver had expended 60 hours at Ronan during the 14-month period and, applying "a very generous rate of $100 an hour", would result in his receiving only $6,000 in commissions. He objected to the request for counsel fees inasmuch as the application was not supported by an affidavit of services, albeit the attorney's time records were submitted. These records reflect a total of 210.8 hours for which the attorney sought to charge at the hourly rate of $125 and 7.9 hours of associate time at $75 per hour, plus disbursements.

Special Term, referring to the animosity between the parties as having frustrated formulation of an equitable plan of dissolution, granted a three-month extension to file a final account and denied Lennon's cross motion to approve his proposed plan of dissolution. Rejecting the contention that commissions were to be computed under section 1217 of the Business Corporation Law, the court awarded interim commissions pursuant to CPLR 8004 in the sum of $85,000, plus $1,647.50 in transportation expenses, granted permission to pay $19,000 for counsel fees and disbursements, and approved the intermediate account.

■ We find ourselves in disagreement with Special Term. The receiver's commission should have been computed under section 1217 of the Business Corporation Law and not under CPLR 8004 (see *Matter of F.G.A. Concrete Constr. Corp.* [*Canter — Farinacci*], 26 AD2d 639; *La Vin v La Vin,* 281 App Div 888, mot for lv to app den 281 App Div 984). Where an action or special proceeding is brought for judicial dissolution, section 1113 of the Business Corporation Law provides for the appointment of a receiver under article 12 to preserve the property and carry on the business of the corporation. Subdivision (a) of section 1202 of the Business Corporation Law similarly authorizes the appointment of a receiver in an action or special proceeding for nonjudicial dissolution (art 10) or judicial dissolu-

tion (art 11). Clearly, the statutory scheme requires that fees and commissions for such a receiver be determined in accordance with the schedule provided by section 1217. The appointment having been made under the Business Corporation Law, it logically follows that the commission should be determined thereunder.

The receiver's contention that section 1217 of the Business Corporation Law applies to a receiver of an insolvent corporation, whereas CPLR 8004 is applicable to solvent corporations, is not well founded. The statutory provisions contained in the Business Corporation Law apply to all dissolution actions, whether involving a solvent or insolvent corporation. Thus, the statute provides that "dissolution is not to be denied merely because it is found that the corporate business has been or could be conducted at a profit." (Business Corporation Law, § 1111, subd [b], par [3]; see *Matter of Tavlin v Munsey Candlelight Corp.*, 69 AD2d 865.) Contrary to the suggestion by respondents, on an application for dissolution, whether voluntary or involuntary, there is no distinction between a solvent or insolvent corporation in terms of the receiver's fee or commission, as may have previously obtained under the General Corporation Law (cf. *Matter of Smith Co.*, 31 App Div 39).

Thus, as applied here, the maximum interim commission to which the receiver would be entitled, applying section 1217 of the Business Corporation Law to "sums received and disbursed" is $23,704.46. However, taking into account all of the facts and circumstances, considering the nature of the services rendered, the time expended over the 14-month period and the sums "received and disbursed", we find the receiver entitled to a commission of $15,000, inclusive of disbursements and travel expenses. Accordingly, we modify the order to reduce the award to that extent.

We also find the receiver's interim account incomplete and deficient in that the balance sheet by the accounting firm which supports the intermediate account does not indicate that it was prepared in conformity with usual and customary accounting procedures. The transmittal letter from the accountants states that they relied upon the representations of management and did not audit or

review the financial statements and, therefore, expressed no opinion thereon. Upon that basis, we find that Special Term improperly approved the interim account in the form submitted. That branch of the motion should have been denied. Upon the submission of a proper and sufficient account, the receiver shall be entitled to payment of the reduced interim commission of $15,000, inclusive of disbursements and transportation expenses.

■ On this record, we also find insufficient support for Special Term's award of counsel fees to the attorney for the receiver. While the award to the attorney for the reasonable value of services rendered ($19,000) was less than that requested ($27,186.43) and was evidenced by records reflecting the time which had been expended, no affidavit of services was submitted, as is required upon an application to fix counsel fees on a *quantum meruit* basis. The operative standard to determine the compensation to be accorded to an attorney is the fair and reasonable value of the services rendered, taking into account "the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained." (*Matter of Potts,* 213 App Div 59, 62, affd 241 NY 593; see *Randall v Packard,* 142 NY 47, 56.) We perceive no appreciable difference between the fact that, in those cases, the attorneys applied directly for a determination of the reasonableness of their fee for services rendered, whereas, here, the application was by the receiver for judicial approval and permission to pay legal fees. In both situations, the application seeks court approval and fixation of the fee based upon the fair and reasonable value of the services rendered. In any event, such application must be supported by a proper and sufficient affidavit of services. Reliance solely upon time records which fail to adequately set forth the nature of the services rendered is insufficient for that purpose. Nor do we deem counsel's reply affirmation at all sufficient. The attorney sets forth therein the total time expended and his hourly billing rate, placing principal reliance upon the fact that there was no objection to the fee request by the temporary receiver. An affidavit of services is imperative inasmuch as the application sought approval of a sum to reasonably compensate

counsel for legal services rendered, a determination which necessarily required an analysis in accordance with the foregoing appropriate criteria. Accordingly, Special Term's award of counsel fees should be vacated and the matter remanded for a hearing to determine the fair and reasonable fee to be accorded to the attorney.

In granting an extension of time to file a final account, Special Term found that the difficulties encountered by the receiver, in large part, resulted from the hostility between the parties, which strongly militated against any attempt at an amicable resolution. This is confirmed by the extensive proceedings and voluminous record on file with the office of the county clerk. It is apparent that an expeditious resolution is critical. We are in agreement with Special Term's observation but two months prior to issuance of the order which is the subject of this appeal that "[t]his dissolution proceeding is in dire need of expedition." (Order, MERCORELLA, J., June 1, 1982.)

It is patently clear that the continuation of a receivership beyond the time reasonably required to effect dissolution could result in severe financial deterioration. Both parties are in agreement a prompt disposition of these proceedings is required to avoid the collapse of the corporation. According to appellant, the fees incident to the receivership have caused the business to operate at a deficit. While the order which is the subject of this appeal only afforded a three-month extension to file a final account, the corporation, after more than 3½ years, is still in receivership and, it is alleged that on December 16, 1982, the receiver made another application for an additional $161,315.58 in commissions, $867 in disbursements and $35,947 in attorney fees for the succeeding 10-month period, ending October 31, 1982.

Where dissolution is sought, the stability of the corporation, the financial security of its stockholders and the ends of justice require that the action or proceeding be disposed of with utmost dispatch, as expeditiously as reasonably practicable. The pendency of this proceeding for more than three years is far in excess of the time reasonably required to effect a final dissolution, even allowing for the animosity and hostility which have plagued the proceeding. Subdivi-

sion (a) of section 1216 of the Business Corporation Law directs the receiver to apply for final settlement of his account and for an order of distribution within one year after qualifying, and further provides that, after expiration of 18 months from the time the receiver has qualified, the Attorney-General or any creditor or shareholder may seek an order directing an immediate accounting and distribution if the receiver has not applied for a final accounting or for an extension of time. Here, the proceeding has been pending for an inordinate period, with no attempt at all to comply with the statutory direction.

■ The degree of dissension, reflected by the intense personal hostility, poses an irreconcilable barrier to the continued functioning and prosperity of the corporation, a hopeless deadlock which mandates dissolution as the only viable remedy (*Matter of Cunningham & Kaming,* 75 AD2d 521, 522; *Matter of Pivot Punch & Die Corp.,* 15 Misc 2d 713, 717). Further continuance of the *status quo* will obviously have a debilitating effect upon the future financial success of the corporation and the security of its shareholders. Accordingly, to fully protect the business and the financial interests of the parties and to advance the ends of justice by a speedy resolution of this impasse, we deem it essential to direct an immediate dissolution by a public sale of the corporation, unless the parties can reach an agreement as to the terms of a private sale in the order to be settled on this appeal.

In reaching this determination, we are mindful of the fact that, in a close corporation, the relationship between the shareholders vis-à-vis each other is akin to that between partners (see *Matter of Gordon & Weiss,* 32 AD2d 279, 281; *Matter of Pivot Punch & Die Corp., supra,* at p 716). The law exacts a high degree of fidelity and good faith in dealings between partners in the conduct of the affairs of the partnership. The same obligations are likewise applicable to shareholders in a close corporation. However, where a deadlock exists to the extent that dissension becomes the order of the day, the impasse may effectively destroy the loyalty and good faith expected of such stockholders in their dealings with each other. The inevitable result is the downfall of the business. In such a case,

dissolution affords to the court an appropriate remedy to judicially direct what in actuality is obvious to all, that the deadlock and dissension have effectively destroyed the orderly functioning of the corporation. The observation of Justice STEUER in *Matter of Gordon & Weiss* (*supra,* at p 281) is equally applicable to this case: "As a consequence, when a point is reached where the shareholders who are actively conducting the business of the corporation cannot agree, it becomes in the best interests of those shareholders to order a dissolution". At this stage, where dissolution is sought, the underlying reason for the dissension is of no moment; nor is it at all relevant to attempt to ascribe fault to either party. Rather, the critical consideration is the fact that dissension exists and has resulted in a deadlock precluding the successful and profitable conduct of the corporation's affairs.

Such is the situation in this case. The animosity and hostility between these parties has created a hopeless situation. As early as July, 1980, Special Term found the corporation "ripe for dissolution." Although more than three years has elapsed, the principals have failed to reach any accord under the guidance of the temporary receiver. Under the circumstances, continuation of the proceeding in its present posture would serve no useful purpose except to undermine the financial stability of the corporation and the security of the shareholders. In the interests of justice, we deem any further delay unwarranted.

Accordingly, the order, Supreme Court, Bronx County (ANTHONY J. MERCORELLA, J.), entered September 8, 1982, should be modified on the law, on the facts and in the exercise of discretion, without costs or disbursements, to deny the application of the temporary receiver for approval of his interim account, without prejudice, reduce the commissions awarded to the receiver on his intermediate account to the sum of $15,000, inclusive of disbursements and travel expenses, with payment deferred until such time as a proper and complete interim account has been approved by Special Term, vacate the award of counsel fees to the attorney for the receiver, with that issue remanded for a hearing before Special Term to fix the reasonable value of the services rendered, grant the cross motion for

approval of a plan of dissolution to the extent of directing dissolution by a public sale of the corporation, unless the parties agree to all of the terms of a private sale to be incorporated in the order to be settled on this appeal, in a stipulation between the parties to be submitted within 30 days, and otherwise affirmed.

MURPHY, P. J., ASCH, FEIN, MILONAS and KASSAL, JJ., concur.

Order, Supreme Court, Bronx County, entered September 8, 1982, unanimously modified on the law, on the facts and in the exercise of discretion, without costs and without disbursements, to deny the application of the temporary receiver for approval of his interim account, without prejudice, reduce the commissions awarded to the receiver on his intermediate account to the sum of $15,000, inclusive of disbursements and travel expenses, with payment deferred until such time as a proper and complete interim account has been approved by Special Term, vacate the award of counsel fees to the attorney for the receiver, with that issue remanded for a hearing before Special Term to fix the reasonable value of the services rendered, grant the cross motion for approval of a plan of dissolution to the extent of directing dissolution by a public sale of the corporation, unless the parties agree to all of the terms of a private sale to be incorporated in the order to be settled on this appeal, in a stipulation between the parties to be submitted within 30 days, and otherwise affirmed.