In the Matter of the Arbitration between ROBERT D. AREN-STEIN, Petitioner, and BARRY S. HUSTON, Respondent.

Supreme Court, New York County, May 10, 1988

**APPEARANCES OF COUNSEL**

*Summit Rovins & Feldesman* for petitioner. *Wohl Leowe Stettner & Fabricant* for respondent.

**OPINION OF THE COURT**

HAROLD BAER, JR., J.

This application in the continuing saga of a law firm's demise deals with several matters, but will be treated as a motion to fix and pay interim commissions to the temporary receiver and interim fees to an accountant* pursuant to CPLR

---

* The fixed fees of the accountant which are minimal are approved and will not be discussed at length.

6401 and 8004. The original application was made on August 25, 1987 by Charles McGuiness, who was appointed as the receiver by a Justice of this court on July 5, 1985 at the request of the petitioner, Arenstein, in connection with the dissolution of the law firm Arenstein and Huston, P. C. (A&H).

This motion raises several issues:

1. Does the statute mandate how the court must compute a receiver's commission?

2. In determining the commissions, how must the "assets of A&H" be defined?

3. Is the temporary receiver entitled to an interim commission?

4. Who is responsible for paying the receiver's commission if there are not enough funds?

The applicable section of CPLR 6401, which governs the duties of the temporary receivers, reads: "(b) Powers of temporary receiver. The court appointing a receiver may authorize him to take and hold real and personal property, and sue for, collect and sell debts or claims, upon such conditions and for such purposes as the court shall direct." The related section of CPLR 8004 reads: "(a) Generally. A receiver, except where otherwise prescribed by statute, is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him, as the court by which he is appointed allows".

DISCUSSION

Under CPLR 8004 (a), it is within the court's discretion to decide what percentage of the "sums received and disbursed" should be used to compute the receiver's commissions. Few cases address this issue and for a time at least, there was no discernable trend. One analysis resulted in an award to the receiver of 2½% (*Madden v Rosseter*, 117 Misc 244 [Sup Ct, NY County 1921]). There the court found (*supra*, at 246): "The receiver's commissions on the delivery of a valuable live animal [a stallion] are not limited or to be computed upon cash collected by him; $5,000 upon a $200,000 or $250,000 live animal is just, proper and reasonable." But see also, *Mackenzie v Marine Midland Trust Co.* (247 App Div 750 [2d Dept 1936]), where the receiver's commissions can only be computed on the sums received and disbursed. *Compare, Pollock v Muller* (30 AD2d 946 [1st Dept 1968]), where the court calcu-

lated commissions as follows: "1% on $26,200.10, cash on hand when the Receiver entered upon his duties and of which he newly took possession, did not create, and which was not the fruit of his services, and 5% on the balance of $65,636.76, which includes the sums due from the partners".

In some cases, the court substituted their own criteria for the 5% guideline in the statute. See, e.g., *Matter of Ronan Paint Corp.* (98 AD2d 413 [1st Dept 1984]), where the court denied the receiver's motion for an interim allowance of $23,704.46 and concluded that taking into account all the facts and circumstances, considering the nature of services rendered, time expended and sums received and disbursed, the receiver was entitled to commission of $15,000 inclusive of disbursements and travel expenses. Accord, *Central Hanover Bank & Trust Co. v Williams* (244 App Div 566 [1st Dept 1935]), where the court found that a commission of 2½% instead of 5% was sufficient in view of the magnitude of the operation involved, the fact that the receiver delegated many duties in accordance with the order of appointment, and the disastrous situation of the bondholders. In *Dubiner v Goldman* (42 AD2d 843, 844 [2d Dept 1973]), the court flat out concluded, "[t]he court in its discretion may, where the facts so warrant, fix a lesser percentage as commissions [i.e., less than the statutory 5%]." In short, the 5% guideline in the statute is just that and should not be taken as a given by a receiver embarking upon his duties.

As to the sum upon which the commission is to be based, courts have generally held that the lynchpin is the dollar amount actually "handled" by the receiver. The court in *Madden (supra)* and *Mackenzie (supra)* held that the commission should be based on the total value of the property distributed by the receiver. See also, *People v Brooklyn Bank* (64 Misc 538 [Sup Ct, Ulster County 1909]), where the court held the commissions of a receiver will be computed on the value of the entire property that comes into his hands and is distributed by him. There the property consisted of cash, securities, notes, bonds, mortgages, evidences of indebtedness or chose in action. But see, *Matter of F.G.A. Concrete Constr. Corp.* (26 AD2d 639 [2d Dept 1966]), there the court cut the lower court's award in half and found that the sum of $10,000 was an ample award for legal services rendered by a receiver in view of the fact that the matter was settled prior to service of an answer by the sole debtor. Accord, *Matter of Kraemer* (40 AD2d 1053 [3d Dept 1972]), where the court held that the

temporary receiver of a corporation could not include in the sum upon which his commission was to be calculated, an amount which was on deposit in the corporate bank account at the time he assumed his duties nor on the interest generated thereon. The court reasoned that such sums were not received and disbursed by him and thus fell outside the statutory language.

Turning to the matter at hand, the sum upon which the receiver's commission is to be computed must begin with a definition of the "assets of Arenstein & Huston, P.C." and that quest begins with Justice Klein's order of July 5, 1985. The order reads in pertinent part:

"that the date upon which all assets of Arenstein & Huston, P.C. are to be valued for the purposes of dissolution shall be July 31, 1984 * * *

"that, upon the temporary receiver qualifying and entering upon his duties, Leonard Holland and David Rosenberg, as successor signatories to a certain special escrow account * * * shall withdraw their names * * * and turn over exclusive signing power to the temporary receiver * * *

"that Charles McGuiness, appointed temporary receiver of all assets of Arenstein & Huston, P.C., including, without limitation, all funds received in connection with negligence cases that were in Arenstein & Huston, P.C. on July 31, 1984, for the purposes of collecting, conserving and distributing such assets and funds received among petitioner, respondent and such other parties entitled thereto in accordance with the Award * * *

"that the temporary receiver is hereby authorized to * * * take all steps necessary to collect all property and assets of Arenstein & Huston, P.C., and take charge and possession of all such property and assets".

Legal fees are considered the assets of a law firm and Justice Klein's order incorporates this principle.

The order distinguishes the negligence cases and with respect to them provides that the receiver is responsible for "all funds received", thus his commission is to be calculated upon the total settlement or verdict. The total including nonnegligence allocations comes to $1,398,404.16 as of March 3, 1988.

With respect to the issue of whether McGuiness should be paid now or upon termination of his receivership, the law seems to favor payment upon termination, "If, at the termination of a receivership, there are no funds in the hands of the

receiver, the court, upon application of the receiver, may fix the compensation of the receiver" (CPLR 8004 [b]). See, *Title Guar. & Trust Co. v Fetner* (169 Misc 363, 364 [Sup Ct, Kings County 1938]), where the court noted, "In 1935 the Legislature * * * passed section 1547-a of the Civil Practice Act. * * * It will be noted that the statute applies to the 'termination' of the receivership".

However, it is within the court's discretion to advance an allowance to the receiver. *(Central Hanover Bank & Trust Co. v Williams,* 244 App Div 566, *supra; see also, Title Guar. & Trust Co. v Koralek,* 247 App Div 915 [2d Dept 1936].) In this case, McGuiness received an interim allowance of $20,000 plus $438.30 for out-of-pocket expenses on July 18, 1986. Before an additional interim allowance is granted, it seems prudent to determine what percentage will be used in computing the receiver's commission.

The McGuiness' accounting shows the funds he deposited between July 19, 1985 and March 3, 1988 totaled $1,352,582.48 plus interest earned of $24,910.84. Thus, the sum upon which the commission is based equals $1,377,493.32. If McGuiness' commission is 5% on these funds, it would be $68,874.67; 4% would be $55,099.73; 3% $41,324.80; 2% $27,549.87, and 1% would be $13,774.93, from which the $20,000 interim allowance must be deducted. As of March 3, 1988, $50,289.91 remains in the bank available for distribution to Arenstein and Huston and for the receiver's commission. However, according to schedule III of McGuiness' information there is $68,657.44 in fees to be apportioned by the court. Only $48,078.23 of that amount is presently available. The difference, some $20,000, never having been deposited by Huston, with the receiver.

With these facts in mind, it seems valuable to indicate who pays the receiver if there are not enough funds in his custody, when his role is completed. CPLR 8004 (b) reads, "If, at the termination * * * there are no funds in the hands of the receiver, the court * * * may direct the party who moved for the appointment of the receiver to pay such sums". If CPLR 8004 is applied literally, the party requesting the appointment of the receiver here, Arenstein would be charged for the difference.

Turning to the disputed cases (or some of them), mainly *Cecilio, McLeod* and *Parness Miller,* the fees will be disbursed in accordance with the proposals advanced by the receiver. To

touch on the largest matter, *Cecilio,* where there is some $43,000 in fees to be divided, I find that the entry of the judgment below made prior to the date of dissolution must govern and, therefore, the fees are divided 50/50.

### SUMMARY

The receiver here will be awarded 2½% of the total sums representing the awards in negligence cases, and accumulated interest. As of March 3, 1988, the sum upon which to calculate the receiver's commission is or appears to be $1,377,493.32, 2½% of that sum equals $34,437.33. Considering McGuiness previously received $20,000 as an interim award, he may receive an additional $10,000 now and the remainder of his commission upon the acceptance of a final accounting including nonnegligence matters and any disputed matters not resolved herein.

Huston is directed to pay over to the receiver certain moneys due and owing at the date of the original order or before. This amount and the interest thereon is set in the amount determined by the receiver.

Upon review of all the papers there is insufficient evidence of willfulness to grant the contempt motion and it is herewith denied.

When the Huston money has been paid into the receiver's account and all the funds paid out including those on the disputed matters referred to above, I will set a date for a hearing on the division of fees in the so-called "Huston" cases and any other open matters, e.g., the lawsuit by the landlord.