Gates v Arreaza (2004 NY Slip Op 50416(U))

[*1]

Gates v Arreaza

2004 NY Slip Op 50416(U)

Decided on January 23, 2004

Supreme Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 23, 2004

Supreme Court, Monroe County
 DOUGLAS S. GATES, as Permanent Receiver of The Genesee Hospital 
 pursuant to Article 12 of the Not-For-Profit Corporation Law, Plaintiff,
against
EDUARDO E. ARREAZA, THOMAS A. BONFIGLIO, VINCENT D. CHANG, RICHARD C. CHERKIS, PHILLIP DVORETSKY, NEIL W. GARROWAY, WILLIAM F. GRACE, WILLIAM R. HOLMAN, F. MARK LAFORCE, MARTHA LEAS, THEODORE K. MAYER, CHANDER MOHINI MEHRA, TAI TAN NGUYEN, TIMOTHY E. QUILL, GREGORY L. SEEGER, JULIA L. SMITH, ROBERT C. TATELBAUM, MAURICE J. VAUGHN, JOHN A. WOLFE, and DIVERSIFIED INVESTMENT ADVISORS, INC., ING LIFE INSURANCE AND ANNUITY COMPANY F/K/A AETNA LIFE INSURANCE AND ANNUITY COMPANY, NORTHWESTERN MUTUAL INVESTMENT SERVICES, AND PRUDENTIAL INVESTMENTS, LLC, Defendants.
Index #2002/11363

Attorney for Plaintiff: Warren B. Rosenbaum, Esq. Shapiro, Rosenbaum, Liebschutz & Nelson 1100 Crossroads Building, Two State Street, Rochester, New York 14614
Attorney for Defendants: Arreaza, Bonfiglio, Chang, Cherkis, Garrowy, Grace, LaForce, Leas, Mayer, Quill, Smith, Tatelbaum and Wolfe: J. Nelson Thomas, Esq. Dolin, Thomas & Solomon, P.C. 135 Corporate Woods, Suite 130 Rochester, New York 14623
Attorney for Defendant: Diversified Investment Advisors, Inc.: Edward R. Conan, Esq. Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202-1355
Attorney for Defendant: Northwestern Mutual Life Insurance Company: Alan M. Wishnoff, Esq. Phillips, Lytle, LLP, 3400 HSBC Center, Buffalo, New York 14203
Attorney for Defendant: The Prudential Insurance Company of America: Paul I. Perlman, Esq. Hodgson, Russ, LLP, One M&T Plaza, Suite 2000, Buffalo, New York 14203
Attorney for Defendant: ING Life Insurance and Annuity Company: Joseph M. Shur, Esq. Relin, Goldstein & Crane, LLP, 1800 First Federal Plaza, Rochester, New York 14614
Attorney for Defendant: Mehra: Elizabeth A. Wolford, Esq. Wolford & Leclair LLP, 600 Reynolds Arcade Building 16 East Main Street, Rochester, New York 14614
Appearance by Letter,
Attorney for Defendant: Seeger: David J. Seeger, Esq. 69 Delaware Avenue, Buffalo, New York 14202

Thomas A. Stander, J.
I.THE MOTIONS
The parties in this action have submitted numerous motions seeking summary judgment. The [*2]Plaintiff, Douglas S. Gates, as Permanent Receiver of The Genesee Hospital ("TGH") submits a motion seeking an order granting Plaintiff summary judgment on the grounds that there are no triable issues of fact and Plaintiff is entitled to judgment for all the relief demanded in the complaint, together with costs and disbursements of this action. The complaint seeks a declaratory judgment declaring that all of the deferred compensation funds constitute the sole and exclusive property of Plaintiff as the Receiver of TGH, free and clear of any claim, lien or other interest on the part of any of the Defendants herein, that the corporate Defendants be directed to deliver all of said funds to the Receiver, and that all of the said funds be distributed to the creditors of TGH. The complaint also alleges a claim against Defendant, Chander Mohini Mehra and Diversified Investment Advisors, Inc. for breach of contract and/or as and for money had and received and seeks judgment in the sum of $358,521.90.
The Defendants, Eduardo E. Arreaza, Thomas A. Bonfiglio, Vincent D. Chang, Richard C. Cherkis, Neil W. Garroway, William F. Grace, F. Mark LaForce, Martha Leas, Theodore K. Mayer, Timothy E. Quill, Julia L. Smith, Robert C. Tatelbaum, and John A. Wolfe ("Group Doctor Defendants") submit a motion requesting partial summary judgment and an order declaring that the contributions to the deferred compensation accounts belong to the Group Doctor Defendants; such funds are deemed to be held in trust for the Group Doctor Defendants; and the Group Doctor Defendants are entitled to receive the contributions to the deferred compensation accounts in accordance with the deferred compensation arrangements.
The Defendant, Diversified Investment Advisors, Inc. ("Diversified"), submits a motion seeking an order (1) permitting Diversified to retain the funds currently held in The Genesee Hospital Account to the credit of the action until final judgment has been entered, or to liquidate the Account and pay the proceeds into such fund or account as the Court directs, and discharging Diversified from liability to any party in this action by reason of any matter or thing set forth in the pleadings herein concerning those funds currently held in the Account; and (2) denying Plaintiff's motion for summary judgment on its second cause of action as against Diversified or, in the alternative, granting summary judgment in favor of Diversified and against Defendant Mehra on Diversified's first and second cross-claims for the recovery of money paid by mistake for unjust enrichment.
The Defendant, The Prudential Insurance Company of America, incorrectly sued as Prudential Investments LLC ("Prudential"), submits a motion seeking an order permitting Prudential to deposit into court the amount of deferred compensation funds identified to individual Defendants, Arreaza, Cherkis, Garroway, Laforce, Leas, Nguyen, Quill, Smith, Vaughn and Wolfe, and upon such deposit, discharging Prudential from any liability to Plaintiff relating to funds held with respect to those Defendants and discharging Prudential from any liability to the named individual defendants.
The Defendant, Northwestern Mutual Life Insurance Company, sued as Northwestern Mutual Investment Services ("Northwestern"), submits a motion seeking an order permitting Northwestern to retain Deferred Variable Annuity Account B Number 144557170 to the credit of the action until final judgment has been entered, or to liquidate the Account and pay the proceeds into such fund or account as the Court directs, and discharging Northwestern from liability to any party to this action [*3]by reason of any matter or thing set forth in the pleadings herein.
The Defendant, ING Life Insurance and Annuity Company f/k/a Aetna Life Insurance and Annuity Company ("ING"), submits a motion seeking summary judgment on Defendant's first counterclaim to interplead funds in ING's possession.
At oral argument of these motions the parties attorneys put a stipulation on the record that the Defendant named in the complaint, Prudential Investments, LLC, was incorrectly named and it was agreed and consented to that the pleadings be amended and all future papers accurately reflect the correct party "The Prudential Insurance Company of America"; and that the Defendant named in the complaint, Northwestern Mutual Investment Services, was incorrectly named and it was agreed and consented to that the pleadings be amended and all future papers accurately reflect the correct party "Northwestern Mutual Life Insurance Company."
Following oral argument the Receiver and various lienholders requested that this Court hold the issuance of a decision concerning certain requested relief to allow the Receiver and lienholders an opportunity to negotiate a possible settlement. On its own initiative the Court stayed the issuance of all related and intertwined pending decisions. In late December 2003 the Court was notified that the settlement discussions were unsuccessful.
II.FACTS
On March 28, 2001 ViaHealth's president and chief executive officer announced that the Board of Directors had unanimously voted to close TGH. On May 21, 2001 TGH was closed by the surrendering of its license to the New York State Department of Health.
On February 15, 2002 Daniel Meyers filed an application for the Judicial Dissolution of The Genesee Hospital and for related relief pursuant to Section 1102 et. seq. of the Not-For-Profit Corporation Law on the basis that the assets of the corporation are not sufficient to discharge its liabilities. The application for judicial dissolution of TGH was granted by order of this Court dated May 8, 2002 and a permanent receiver was appointed pursuant to Not-For-Profit Corporation Law.
The Defendants, Eduardo E. Arreaza, Thomas A. Bonfiglio, Vincent D. Chang, Richard C. Cherkis, Phillip Dvoretsky, Neil W. Garroway, William F. Grace, William R. Holman, F. Mark LaForce, Martha Leas, Theodore K. Mayer, Chander Mohini Mehra, Tai Tan Nguyen, Timothy E. Quill, Gregory L. Seeger, Julia L. Smith, Robert C. Tatelbaum, Maurice J. Vaughn, and John A. Wolfe ("Individual Defendants") in this action all entered into Deferred Compensation Agreements based upon their employment. At issue is the effect of the terms of these agreements on the distribution of the deferred compensation account funds in the dissolution proceeding.
III.DECLARATORY JUDGMENT ON OWNERSHIP OF DEFERRED COMPENSATION FUNDS
The parties seek summary judgment for a declaration as to ownership of the deferred compensation funds. The Plaintiff seeks summary judgment on its first cause of action and asserts that all of the deferred compensation funds constitute the sole and exclusive property of the Receiver of TGH, free and clear of any liens or interest of the Individual Defendants. The Individual Defendants claim that they are entitled to the deferred compensation funds that were deductions from their salary.[FN1]
A.THE DEFERRED COMPENSATION AGREEMENTS
Each of the Individual Defendants entered into a "Deferred Compensation Agreement" ("Agreement") with their employer.[FN2] All of the Agreements contain a term addressing the payment of benefits. Although there are various forms of the Agreement, all of them contain one of the following clauses or similar language for the payment of benefits:

6. Payment of Benefits. . . . (a) If the Employee's employment hereunder is terminated . . . for any reason . . . the Hospital shall pay to him or her an amount equal to the fair market value of the assets in the Deferred Compensation Account as of such date under any of the distribution options available under the investment vehicle or vehicles, if any, in which the Employee's Deferred Compensation Account is then invested. . . .[FN3]
(Agreement with Arreaza, June 29,1995 [Receiver's Ex. 21]).
[*4]
6. Payment of Benefits. The Employee's compensation deferred hereunder shall be payable in one of the distribution forms available under the investment vehicle(s) in which the Employee's Deferred Compensation Account is invested, upon the later of (a) the initial period prescribed in the Employee's salary reduction agreement, or (b) the date two (2) years after the Effective Date, or upon the Employee's death, permanent disability, or termination of employment with the Employer, if earlier.
(Agreement with Bonfiglio, January 3, 2000 [Receiver's Ex. 22]).
The compensation deferred under these agreements was required to be paid upon termination of employment with the Employer. On May 21, 2001 TGH surrendered its license to the New York State Department of Health to operate as a hospital. Subsequent to May 21, 2001 none of the doctors were employed by TGH to perform substantial services as required under the Deferred Compensation Agreements. Therefore, the specific contract terms require that the deferred compensation of the Employees held in the investment vehicles under the Agreements is payable, at the latest, as of May 21, 2001.
When the employees were terminated by TGH as of May 21, 2001, at the latest, such employees were entitled to payment of their salary which had been deferred and held in the deferred compensation accounts. "[T]he dispositive factor in determining whether compensation constitutes wages is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable" (Truelove v Northeast Capital & Advisory Inc., 268 AD2d 648, 649 [3rd Dept. 2000]; accord Tuttle v Geo. McQuesten Co., Inc., 227 AD2d 754, 756 [3rd Dept. 1996]). Upon termination on May 21, 2001, TGH no longer maintained any discretion over the account moneys, pursuant to the Agreement the moneys were due and payable to the employee, and the funds were no longer subject to forfeiture.
At termination, the compensation due to the employees through the salary reduction program agreed to in the Deferred Compensation Agreements was vested and mandatory. As of May 21, 2001, at the latest, the Individual Defendants were entitled to their withheld salary contained in the deferred compensation funds.
B.PRIORITY OF PAYMENT UPON DISSOLUTION
TGH was closing its entire operation during May 2001. However, TGH did not pay its terminated employees the deferred compensation amounts contained in the investment vehicles which became due upon termination on May 21, 2001. These invested deferred compensation sums remained in the [*5]investment vehicles.[FN4]
Subsequently, in February 2002 TGH moved for judicial dissolution, which was granted by Order of May 8, 2002. The Receiver was vested with title to all the property of TGH for the benefit of creditors. The deferred compensation accounts were part of this property of TGH vested in the Receiver. The Receiver must distribute the assets to the creditors according to the Not-For-Profit Corporation Law. This statute establishes the order of payment by a receiver in a dissolution proceeding:

(a) Laborers' wages shall be preferred claims and entitled to payment before any other creditors out of the assets of the corporation in excess of valid prior liens or encumbrances.
( N-PCL §1210). Wages are defined as "the earnings of an employee for labor or services rendered . . ." (Labor Law §190[1]).
The only parties asserting a prior lien to the assets of the corporation are Manufacturers Traders and Trust Company, in its capacity as Trustee on behalf of certain bond holders under the terms of a certain Indenture of Trust dated as of December 1, 1991 ("Trustee"), and Rochester General Hospital ("RGH")(jointly "M&T Liens"). Both the Trustee and RGH entered into an "Amendment to Stipulation for Order Regarding Procedure to Determine Validity, Enforceability, Extent and Priority of Certain Liens" ("Stipulation") with the Receiver of TGH on May 14, 2003. This Stipulation provides the following:

The Trustee and RGH acknowledge and agree that their claim of lien or other security interest in and to the funds of TGH neither extends nor attaches to the Deferred Compensation Funds or the Special Research Funds, and the same shall not constitute either "Gross Receipts" or part of the "Pledge Fund" as set forth in the pertinent Bond Documents at issue, provided, and so long as, no former employee of TGH in respect of whom the Deferred Compensation Funds were deposited, or any other present or future defendant in the Deferred Compensation Action, shall make any claim of lien or specific property interest in and to the Pledge Funds or the Gross Receipts as defined in the Bond Documents, except for claims as creditors under the priorities established by the pertinent provisions of the Not-For-Profit Corporation Law, . . .
[*6]
This Stipulation establishes that the M&T Liens do not attach or extend to the Deferred Compensation.[FN5] There are no alleged valid prior liens which would take priority over the preference to laborers' wages pursuant to N-PCL§1210.
The deferred compensation consisting of sums obtained by salary reduction of the Individual Doctors were laborers' wages due when employment at TGH was terminated on May 21, 2001. These deferred compensation accounts containing salary due to the employees, which payment by TGH was deferred in accordance with the Agreements, became due and payable with no right to forfeiture when the employment of the Individual Doctors was terminated. In accordance with §1210 of the N-PCL these wages shall be preferred claims and entitled to payment before any other creditors out of the assets of the corporation (N-PCL §1210[a]). 
C."EMPLOYER" NAMED IN DEFERRED COMPENSATION AGREEMENT
If the Individual Defendant was employed by TGH, as assumed in the above portion "B" of this Decision, then the employee is entitled to a preference in payment of the amount due from the deferred compensation funds.
Some of the Individual Defendants have raised the issue that their Deferred Compensation Agreements indicate that ViaHealth is the Employer and/or that ViaHealth executed the agreements. ViaHealth is not a party to this action. However, ViaHealth is the New York not-for-profit corporation that was the sole member of TGH. In this capacity ViaHealth assumed the administration of the TGH deferred compensation program and the deferred compensation benefits.
While ViaHealth was administering the TGH deferred compensation benefits, several Deferred Compensation Agreements were executed with a signature line indicating ViaHealth, but containing "The Genesee Hospital" (TGH) as the Employer:
Thomas A. Bonfiglio, Employee - dated January 3, 2000
William R. Holman, Employee - dated January 3, 2000
There were also several Deferred Compensation Agreements that reflect ViaHealth as the Employer and were executed by ViaHealth:
Philip Dvoretsky, Employee - dated January 1, 2001
[*7]
Robert Tatelbaum, Employee - dated June 15, 1999
Gregory Seeger, Employee - dated October 29, 1999
Theodore K. Mayer, Employee - dated December 15, 1999
William F. Grace, Employee - dated January 1, 2001
 C. Mohini Mehra, Employee - dated July 31, 2000
Notwithstanding the indication that Viahealth was the employer, the evidence presented includes W-2 Forms for the years 2000 and 2001 showing that the above named Defendants were employee's of "The Genesee Hospital" (TGH).[FN6]
Based on the evidence presented, to the extent that the monies placed in the Deferred Compensation Funds were from a reduction in the salary which would otherwise have been paid by, or from the assets of TGH, these sums became wages upon the termination of employment from TGH. These employees are entitled to application of the preference afforded by N-PCL §1210[a] for payment from the Receiver of the deferred compensation funds.
However, if any of the monies placed in deferred compensation accounts were from a salary reduction of earnings from ViaHealth or other related entity, then such funds are not governed by this Decision. 
D.CONCLUSION ON DECLARATORY JUDGMENT
The motion by the Plaintiff, Receiver of TGH, for summary judgment on its first cause of action declaring that all of the deferred compensation funds constitute the sole and exclusive property of Plaintiff as the Receiver of TGH, free and clear of any claim, lien or other interest on the part of any of the Defendants herein is DENIED.
The motion of the Defendants, Eduardo E. Arreaza, Thomas A. Bonfiglio, Vincent D. Chang, Richard C. Cherkis, Neil W. Garroway, William F. Grace, F. Mark LaForce, Martha Leas, Theodore K. Mayer, Timothy E. Quill, Julia L. Smith, Robert C. Tatelbaum, and John A. Wolfe requesting partial summary judgment is GRANTED.
It is DECLARED that as of the termination of employment by TGH of the Individual Defendants on May 21, 2001, at the latest, the deferred compensation funds contained in the investment vehicles of the Corporate Defendants became wages due and payable to the Individual Defendants. It is DECLARED that the Individual Defendants are entitled to payment, before any other creditors of TGH, of the amounts contained in the Deferred Compensation Accounts, subject to this Court's Decision at Paragraph V herein.
[*8]
The motion of the Group Doctor Defendants for a declaration that the deferred compensation funds are deemed to be held in trust for the Individual Defendants is DENIED.
The motion of the Receiver seeking an order directing the Corporate Defendants to deliver all of said funds to the Receiver is GRANTED, except for the sum of $71,704.38 plus any gain subsequent to being restored to the account, which amount shall remain in the account with Diversified until resolution of the dispute among Dr. Mehra, the Plaintiff, and Diversified.[FN7]
It is ORDERED that the Corporate Defendants deliver all funds to the Receiver contained in the investment vehicles in accordance with the provisions of the contracts.
IV.CLAIMS AGAINST DEFENDANTS MEHRA AND DIVERSIFIED
The complaint of the Receiver of TGH also alleges a claim against Defendant, Chander Mohini Mehra and Diversified Investment Advisors, Inc. for breach of contract and/or as and for money had and received and seeks judgment in the sum of $358,521.90. This claim is based upon a deferred compensation fund distribution by Diversified to Mehra on April 25, 2001 for the sum of $286,817.52, with the additional sum of $71,704.38 withheld by Diversified for income tax payments. The Receiver asserts that this was an unauthorized distribution from the TGH account and represents money of TGH.
By letter of June 8, 2001 TGH demanded that Diversified restore the total amount of $358,521.90 to the account. Diversified restored the amount of $71,707.38 withheld for income taxes to the account and demanded Mehra return the distributed amount. Mehra retained the monies distributed and in April 2002 paid income tax in the amount of $113,025.00 on the amount disbursed.
Diversified seeks an order denying Plaintiff's motion for summary judgment on its second cause of action as against Diversified or, in the alternative, seeks summary judgment in favor of Diversified and against Defendant Mehra on Diversified's first and second cross-claims for the recovery of money paid by mistake and for unjust enrichment.
The Defendant, Mehra, has raised a question of fact that requires a trial. There are several issues raised that prohibit summary judgment as a matter of law. The Defendant, Mehra, asserts that her employment ended on April 23, 2001; while the Plaintiff's Response to Dr. Mehra's First Set of Interrogatories at paragraph 7 indicates that her last day of employment at TGH was April 25, 2001. The funds were distributed on April 25, 2001. The Defendant also shows that the Deferred Compensation Agreement at issue is dated July 31, 2000 with "ViaHealth" as her employer and having been executed by ViaHealth. There are also letters indicating that Diversified advised of the [*9]procedure and forms to follow for distribution to her of the deferred compensation funds. There is also a letter from the Attorney to the Receiver herein advising that it appears Dr. Mehra has no claims or rights as against the funds of TGH since the Deferred Compensation Agreement names ViaHealth as her employer.
There are questions of fact presented on this motion concerning the claims and cross-claims among TGH, Dr. Mehra, and Diversified. The motion of TGH for summary judgment on its second cause of action is DENIED. The motion of Diversified for an order denying Plaintiff's motion for summary judgment on its second cause of action as against Diversified is GRANTED. The motion in the alternative of Diversified seeking summary judgment in favor of Diversified and against Defendant Mehra on Diversified's first and second cross-claims for the recovery of money paid by mistake and for unjust enrichment is DENIED.
V.PAYMENT OF COMMISSIONS AND EXPENSES
The commissions and expenses allowed to a Receiver is governed by statute.[FN8] The Not-For-Profit Corporation Law provides for commissions to be paid in a receivership involving a not-for-profit corporation:

(a)A receiver shall be entitled, in addition to his necessary expenses, to such commissions upon the sums received and disbursed as may be allowed by the court, as follows:
(1)On the first twenty thousand dollars, not exceeding five percent;
(2)On the next eighty thousand dollars, not exceeding two and one-half percent; and
(3)On the remainder, not exceeding one percent.
(N-PCL §1217[a].) This statute allowing commissions to a receiver does not offer any assistance on the practical aspects of defining the "sums received and disbursed."
One must look to the common law for direction on what sums qualify for computing a receivers commission. The Court of Appeals has articulated the general nature of a receivership:
[*10]
A receivership is a creature of the court, "subject to the control of the court at all time", and functions in the place of and as the instrumentality of the court itself. As a special "officer of the court" with "fiduciary responsibilities", the receiver acts solely on the court's behalf and is otherwise a stranger to the parties and their dispute. The corporation is the court's ward and its property  the corpus of the receivership itself cannot be diminished to the benefit of the receiver without the court's approval [all citations in text deleted].
(In the Matter of Kane, 75 NY2d 511, 515 [1990]; see Salmon v Schenectady Mason Supply Corp., 278 AD 609 [3rd Dept. 1951][receiver becomes officer of the court in control of corporation]). "A receiver of the property of a corporation can be appointed only by the court, and in [specifically defined cases]" (N-PCL §1202[a]). At all times an appointed receiver is subject to the control of the court (N-PCL §1202[b]).
A.RECEIVERSHIP ORDER
The order appointing a receiver defines the property of the corporation that is the corpus of the receivership (see generally In the Matter of Kane, 75 NY2d at 515; In the Matter of Arenstein, 142 Misc 2d 491, 494 [NY Cty 1988]). The receivership herein was created by Court Order of May 8, 2002, which was entered May 10, 2002 ("Receivership Order").
This Receivership Order directs that the Receiver shall "be vested with title to all the property of the corporation." Concerning the existing bank accounts and the deposit of funds the Receivership Order states:

The Receiver shall deposit all funds of the corporation not needed for immediate disbursement in any account currently holding such funds, on the condition that such accounts must be modified to reflect that the Receiver is the sole owner and has sole control of the accounts, and/or at Manufacturers & Traders Bank, and/or at HSBC Bank, and/or at Fleet Bank (emphasis added).
Under these specific terms of the Receivership Order and pursuant to the authority of the Court, the sums received by the Receiver consist of all TGH property, including title and control of all bank accounts and investment accounts in existence, as well as those accounts opened by the Receiver for deposit of funds.[FN9] These funds are under the control of the Receiver for the benefit of all creditors.[FN10]
[*11]
These assets and accounts of TGH were placed in the hands of the Receiver by the Court to preserve this property until all the rights and priorities could be established among the numerous creditors. At the time of the application for a judicial dissolution by TGH there were significant, complicated issues regarding the rights and priorities of competing creditors to the assets, as well as uncertainty of exactly what assets existed. There was also a mortgage foreclosure action commenced regarding a portion of TGH's property, issues concerning the rights to special research funds and donor funds, and questions about the rights of employed doctors to deferred compensation funds. Upon allowing the judicial dissolution, this Court directed for the benefit of the corporation that all assets be vested and titled in the Receiver until these many issues could be resolved.
In order for these questions to be addressed it has been necessary for the Receiver to actively seek judicial intervention for determination of the various creditors rights and priorities. The rights of creditors to these funds will ultimately be decided as a direct result of the acts and performance of services by the Receiver. Further, based upon the Receivership Order, all property and accounts of TGH will be disbursed by the Receiver to the creditors determined to be the proper recipient. Due to the complex nature of the claims of creditors seeking rights in the assets of TGH at the time of the judicial dissolution it was necessary to preserve all assets by placing them under the control and title of the Receiver.
B.SUMS RECEIVED AND DISBURSED
The Receiver is entitled to the statutory commissions "upon the sums received and disbursed as may be allowed by the court" (N-PCL §1217 [a]). The Court of Appeals recognizes that "a court-appointed receiver [] is the court's direct agent . . ." (In the Matter of Kane, 75 NY2d at 515). The Receiver was appointed to administer the assets of the judicially dissolved TGH. All the property placed in the possession and under the control of the Receiver are subject to the attendant expenses of administration, including the Receivers' commissions and necessary expenses and disbursements (see In the Matter of Active Wholesalers, Inc. 33 Misc. 2d 561, 563 [Queens Cty 1962]). 
The Receiver is entitled to payment for all necessary expenses in the administration of the receivership (see Goldman v Bernardini, 246 AD2d 510 [2nd Dept. 1998]). All such commissions and expenses of the Receiver are required to be paid before all other claims, including pre-existing liens (see Active Wholesalers at 563; Atlas Iron Construction at 419 [lien of state and city for taxes is subject to the commissions and expenses of the receiver]; Okyle v Highbridge Family Laundry Service, Inc., 179 Misc. 153, aff'd 266 AD 661 [1st Dept. 1943], appeal dismissed 290 NY 867 [*12][1943][expenses of receiver's attorney are part of administration costs; all such expenses take precedence over pre-existing liens and are entitled to payment priority]). "[Administration expenses, including the commissions of the Receiver] are entitled to priority over every other claim, for without administrators no claims could be considered" (Rosenzweig v Zirkatz Realty Corp., 145 Misc. 653 [Kings Cty 1932]). The Receivers commissions and necessary expenses have priority over the "wages" held in the deferred compensation investment accounts which are due to the Individual Defendants pursuant to N-PCL §1210[a].
The Receiver is entitled to commissions "based upon the moneys that actually passed through the receiver's hands, which were collected by him and were paid out by various orders of the court" (In the Matter of Little, 47 AD 22, 24 [1st Dept. 1900]). Pursuant to the Receivership Order and this Decision, all monies in the existing investment accounts containing deferred compensation funds were placed in the receivership, the Receiver received these sums, and the Receiver by Court adjudication will disburse these sums. The "sums received and disbursed" subject to payment of commissions, expenses and disbursements for the administration of the receivership of TGH are all assets vested and titled in the Receiver pursuant to the Receivership Order. This includes all the accounts holding the deferred compensation funds of the Individual Defendants.
C.PAYMENT OF COMMISSIONS
The Receiver is entitled to compute the commissions due upon all "sums received and disbursed," including the deferred compensation account amounts, sums contained in TGH bank accounts, and all other TGH assets vested and titled in the Receiver, in accordance with N-PCL §1217[a]. Upon application, the Court approves the amount of commissions due a Receiver (N-PCL §1217; see Matter of Kane at 515).
These approved Receiver commissions, together with all administrative costs and expenses, are paid from the assets of TGH (see Matter of Kane at 515; N-PCL §1216; Active Wholesalers at 563). The payment of the Receiver's commissions, administrative costs and expenses have priority over all other claims (see Active Wholesalers at 563; Atlas Iron Construction at 419).
After payment of the Receivers commission, administrative costs, and expenses, then the order of payment by the Receiver is established by N-PCL §1210. Under this statute valid prior liens or encumbrances must be paid out of the assets of the corporation (see N-PCL §1210[a] and [b]). Thereafter, "[l]aborers' wages shall be preferred claims and entitled to payment before any other creditors out of the assets of the corporation . . ." (Id.). Then the residue, subject to any prior liens or encumbrances, must be distributed among the creditors whose claims have been proved and allowed in accordance with the priorities set forth at N-PCL §1210 [b].
Here, the Receiver is entitled to priority payment of all commissions, administrative costs, and expenses from the assets of TGH. Thereafter, if there are no valid prior liens or encumbrances shown on the Receiver's application for distribution, then the laborers' wages in the amount of the deferred [*13]compensation accounts have a preference to payment (N-PCL §1210).[FN11] Any sums then remaining in the Receiver's name are to be distributed in accordance with the priorities set forth at N-PCL §1210.
All these distributions are subject to the Receiver's application for an order for distribution and the issuance of an order by the Court allowing and authorizing the payments (N-PCL §1216).
O R D E R
Based upon all the papers submitted in support and in opposition to these motions, upon the above Decision, and after due deliberation, it is hereby

ORDERED that the motion of the Defendants, Eduardo E. Arreaza, Thomas A. Bonfiglio, Vincent D. Chang, Richard C. Cherkis, Neil W. Garroway, William F. Grace, F. Mark LaForce, Martha Leas, Theodore K. Mayer, Timothy E. Quill, Julia L. Smith, Robert C. Tatelbaum, and John A. Wolfe requesting partial summary judgment is GRANTED, as stated herein; it is further
ORDERED that it is DECLARED that as of the termination of employment by TGH of the Individual Defendants on May 21, 2001, the deferred compensation funds contained in the investment vehicles of the Corporate Defendants became wages due and payable to the Individual Defendants; that such funds continued to be held by TGH and title to these investment accounts were vested in the Receiver upon the May 8, 2002 Order; and further, that the Individual Defendants are entitled to a preference in payment, before any other creditors of TGH, of the amounts contained in the Deferred Compensation Accounts in accordance with the specific contract terms; it is further
ORDERED that the motion by the Plaintiff, Receiver of TGH, for summary judgment on its first cause of action declaring that all of the deferred compensation funds constitute the sole and exclusive property of Plaintiff as the Receiver of TGH, free and clear of any [*14]claim, lien or other interest on the part of any of the Defendants herein is DENIED; it is further
ORDERED that the motion of the Defendants for a declaration that the deferred compensation funds are deemed to be held in trust for the Individual Defendants is DENIED; it is further
ORDERED that the motion of the Plaintiff seeking an order directing the Corporate Defendants to deliver all of said funds to the Receiver is GRANTED, except for the sum of $71,704.38 plus any gain subsequent to being restored to the account, which amount shall remain in the account with Diversified until resolution of the dispute among Dr. Mehra, the Plaintiff, and Diversified; it is further
ORDERED that it is DECLARED that the Corporate Defendants, except for Diversified which is to retain the specified sum, shall deliver all funds of the individual Defendants contained in the investment vehicles to the Receiver in accordance with the provisions of the investment contracts; it is further
ORDERED that the motion of the Plaintiff for summary judgment on its second cause of action is DENIED; it is further
ORDERED that the motion of Diversified for an order denying Plaintiff's motion for summary judgment on its second cause of action as against Diversified is GRANTED; and the motion of Diversified, in the alternative, seeking summary judgment in its favor and against Defendant Mehra on Diversified's first and second cross-claims for the recovery of money paid by mistake and for unjust enrichment is DENIED; it is further
ORDERED that the motion of Diversified permitting it to retain the funds currently held in The Genesee Hospital Account is GRANTED pending the outcome of the dispute among the Receiver, Diversified, and Defendant Mehra; and the motion of Diversified to discharge it from liability to any party in this action by reason of any matter or thing set forth in the pleadings concerning those funds currently held in the TGH Account is DENIED; it is further
ORDERED that the motion of Prudential to be discharged from any liability to Plaintiff relating to funds held with respect to the Individual Defendants and discharging Prudential from any liability to the named Individual Defendants is GRANTED, upon the deposit [*15]of the amounts of deferred compensation funds with the Receiver in accordance with the terms of the investment contract; it is further
ORDERED that the motion of Northwestern to be discharged from liability to any party to this action by reason of any matter or thing set forth in the pleadings herein is GRANTED, upon the deposit of the amounts of deferred compensation funds with the Receiver in accordance with the terms of the investment contract; it is further

ORDERED that the motion of ING Life Insurance for summary judgment on Defendant's first counterclaim to interplead funds in the possession of ING Life Insurance is GRANTED, upon the deposit of the amounts of deferred compensation funds with the Receiver in accordance with the terms of the investment contract; it is further
ORDERED that it is DECLARED that the commissions, expenses and administrative costs of the Receiver are chargeable against all "sums received and disbursed" by the Receiver on behalf of The Genesee Hospital, including the deferred compensation funds at issue in this Decision; it is further
ORDERED that it is DECLARED that the payment of the allowed commissions, expenses and administrative costs has priority over any other claims against the assets of The Genesee Hospital; it is further
ORDERED that, in accordance with the Stipulation put on the record at oral argument, the pleadings are amended and all future papers in this action shall accurately reflect the correct parties of "The Prudential Insurance Company of America" in place of Prudential Investments, LLC, and "Northwestern Mutual Life Insurance Company" in place of Northwestern Mutual Investment Services.
Dated:January ___, 2004
Rochester, New York
Thomas A. Stander
 Supreme Court Justice

Decision Date: January 23, 2004
Footnotes

Footnote 1: All the funds at issue originated from the salaries of the individuals, there were no employer contributions by TGH or any other entity. 

Footnote 2: The "employer" is not always clear from a strict reading of the various Agreements. Some of the agreements state TGH is the employer and are signed by TGH; some indicate TGH is the employer but are signed by ViaHealth; while others indicate that Viahealth is the employer. The Court will initially assume that TGH is the employer who properly entered into the Deferred Compensation Agreements with its employees. 

Footnote 3: There are also requirements regarding the age of the employee or a two year time period after the effective date of the agreement that are not stated because they are not relevant to the current issues.

Footnote 4: Although the record keeping and paperwork at various times reflect TGH, ViaHealth, or similar affiliated entities as being the contract holder with the investment vehicle companies, this Court assumes that the investments were held under contracts with TGH.

Footnote 5: Because of this Stipulation, the Court need not reach the issue of priority between the "wages" of the Individual Defendants and the M&T Liens. 

Footnote 6: There is not a W-2 submitted for Philip Dvoretsky. This Defendant has not moved for summary judgment.

Footnote 7: See Section IV of this Decision.

Footnote 8: The payment of commissions to receivers are governed by several statutes: CPLR §8004 (general provision for all receivers, except where otherwise prescribed by statute); Not-For-Profit Corporation Law §1217; Business Corporation Law §1217; and General Business Law §353-a. 

Footnote 9: One court has held that a temporary receiver was "not entitled to commissions on the amount which was on deposit in the corporate bank account when he assumed his duties nor on the interest generated thereon since such sums were not received and disbursed by him" (In the Matter of Kraemer, 40 AD2d 1053 [3rd Dept. 1972]). There is no indication that the order appointing this temporary receiver gave title of these bank accounts to such receiver, nor that there were any issues concerning the priority of security interests attaching to the accounts. The instant TGH case is clearly distinguishable.

Footnote 10: This Receivership Order was not appealed by any of the creditors.

Footnote 11: The only current alleged valid prior lien is that of the Trustee and RGH. However, the Trustee and RGH entered into a Stipulation acknowledging that their claim of lien or security interest does not extend nor attach to the Deferred Compensation Funds.